## UNITED STATES v. DOUMAIN.

Fourth Division. Fairbanks. March 7, 1923.

No. 833–C.

1. **Criminal Law** ⬅=394—Searches and Seizures—Intoxicating Liquor.
Where a deputy United States marshal enters the residence and dwelling house of a citizen, without invitation or a search warrant, and discovers evidence of the presence of intoxicating liquor in the house, *held*, upon motion, such evidence will be suppressed and excluded, where the person is being prosecuted for a violation of the Nátional Prohibition Law (27 USCA), based on that evidence alone.

2. **Criminal Law** ⬅=394—Searches and Seizures—Intoxicating Liquor.
The defendant was arrested for violation of the National Prohibition Act (27 USCA); the evidence of the alleged crime having been procured by a deputy United States marshal, who entered the private dwelling house of the defendant without an in-

⬅See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vitation, or the consent of the defendant, and there found evidence of the presence of intoxicating liquor, after which he procured a warrant of arrest, and a search warrant, based on what he discovered while in the dwelling house. Upon motion to suppress the evidence so obtained, the prosecution, in answer to the motion to suppress, for the first time offered to show that the defendant also used the house as a bottling works. *Held*, such offer came too late, and should have been alleged in the application for the search warrant.

Guy B. Erwin, U. S. Atty., of Fairbanks.
Thomas A. Marquam, of Fairbanks, for defendant.

CLEGG, District Judge.  The facts in this case show that the deputy marshal entered the dwelling house of the defendant without an invitation or any legal process, and while there discovered some evidence of the presence there of intoxicating liquor.

I would like to have more time to decide this matter, but on account of the fact that the trial jury is here it cannot very well be postponed, owing to the present state of the calendar. I have, however, since these indictments were returned, been making an independent investigation of the law with reference to the late decisions on the matters presented in both these motions, and I have also been greatly assisted by the arguments of the attorneys in the matter in coming to a settled conclusion in my own mind as to how to decide these matters according to law.

The proposition is comparatively new in this jurisdiction, and so required considerable investigation, because the authorities are conflicting on a number of the questions presented, and the chief thing to do is to see what are the controlling authorities, in view of the language of the statute.

Now in this case of Doumain the indictment charges him with willfully manufacturing intoxicating liquor in count 1, and in count 3 with manufacturing liquor and possessing it, and a motion is made to suppress the evidence upon certain grounds set up in the pleadings, and it has been agreed by counsel that after the argument on the law if it is necessary for the court, in order to pass upon the matter properly, to hear evidence, that that might be done and evidence might be heard after the arguments.

Now I do not find that it is necessary, so far as I am concerned, to hear any evidence on the proposition, because it seems to be conceded by the government, if not directly, indirectly, and I am going to assume it as a fact, that the house of Doumain, where the officers saw these bottles of liquor, was his residence.

With reference to the third count of the indictment the facts are, as I view it, and as can be well determined from the pleadings, that Doumain was already under arrest for some offense under the National Prohibition Act (27 USCA), or had been charged with violating it, I should say, and that a warrant had been issued for his arrest, and the officer went there to arrest him and saw certain things, certain conditions, in his house, residence, dwelling, that indicated to him that Doumain was there violating the National Prohibition Act, and thereupon he swore out a warrant of arrest, which is set up here in the motion to suppress the evidence, made an affidavit for a search warrant before the commissioner and had a search warrant issued authorizing the officer, the United States marshal, to search his dwelling and premises for property and liquor therein in violation of the National Prohibition Act.

The affidavit itself, as set out here, and I presume it is correct, states that he has in his possession and under his control in this building—

"certain intoxicating liquors, consisting of about 50 bottles thereof, together with other articles of personal property used, and intended to be used, in the manufacture of intoxicating liquors," etc., "and intends to use it for the commission of a crime, to wit, the unlawful possession, sale, barter, or exchange of intoxicating liquors and the manufacture thereof, otherwise than as provided by the National Prohibition Act."

So it is clear that this affidavit for a search warrant was issued under the National Prohibition Act and not issued under any statute of our own or of our local laws.

Now in this latter part of section 25 of title 2 of this act (27 USCA § 39) it says:

"No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor."

That is to say, a man may manufacture all the liquor he wants to in his residence under the National Prohibition Law, or he

7 A.R.—3

may be giving it away, or he may be exchanging it for something else, but that does not authorize anybody to use a search warrant against him and have him arrested and his premises searched. The facts that must exist in order to constitute a search of his dwelling must be that he is selling it there; not that he was selling the liquor there, but that he was using the house, the premises, the dwelling, for the sale of liquor.

In examining this affidavit here sworn to by the deputy marshal there is nothing stated in it at all as to whether or not this is his dwelling, and it does not say that the dwelling is being used for the unlawful sale of liquor.

Nor does it come under the other subdivision, which says:

"Or unless it is in part used for some business purpose, such as a store, shop, saloon, restaurant, hotel, or boarding house."

The search warrant follows the language of the affidavit, shows that it is issued under the National Prohibition Act, authorizing them to search this building, which I find is the dwelling of Doumain, and does not state anywhere that the defendant is using the premises for the sale of liquor, nor is there anything in the language of the affidavit or search warrant from which that conclusion can be drawn, while in pursuance of the affidavit and search warrant the marshal went over and searched the premises and discovered a lot of things, including bottles of beer and everything else that goes with the manufacture, or generally conceded to go with the manufacture, of beer or liquor of some kind.

Now, under the authorities it is unquestioned that, in order to search a man's dwelling under this law, the affidavit must show that the dwelling is being used for the unlawful sale of liquor, and that is the only ground under the National Prohibition Act that a search warrant can issue for a dwelling house that is occupied as such.

Mr. Gillette: I call the court's attention to the allegations made in our answer that it was used as a bottling works.

The Court: Yes, I know, I have already told you I am not going to hear any evidence on that proposition, because I am satisfied that the facts would show that it was used as a dwelling house, and if it was not a dwelling house it should have been shown in the affidavit for the issuance of the search warrant. That designation of bottling works does not bring it under the second subdivision of this section.

Now this protection that is given to the people by the incorporation of this section that I have referred to in the National Prohibition Act is exactly in line with the Fourth and Fifth Amendment, which provides that the people shall be secure in their person and property against unreasonable and unlawful search; it is an additional protection to the people from unreasonable and unlawful searches. And any evidence gained in a manner which goes contrary to the wording of the statute, and in addition to that is contrary to the letter and the spirit of the Fourth and Fifth Amendments, I hold should not be permitted to be used as evidence against the defendant. I do not care how bad he is, or how much a hardship it is going to work upon the government; I am satisfied that the force and reasoning of the decisions, not only the recent decisions, but the early decisions of the Supreme Court, on this question, are binding upon this court, and, whether the court wanted to or not, he is bound by the holdings of the Supreme Court in that matter. Their language cannot be misconstrued, it seems to me. They say that the Fourth and Fifth Amendments are a limitation upon the federal government, and upon the sovereign government, and that it is a limitation upon United States officers; and other courts, in commenting upon those decisions, have approved it and are guided by the decisions of the Supreme Court in that matter. So that I find no difficulty whatever in acceding to the rules that they lay down in the Gouled Case, the Amos Case, and in the early Boyd Case.

It seems to me that it is a necessary protection to be afforded to the people, not only against encroachments under this law particularly, but against unreasonable searches and seizures for any purpose under the guise of law. If the circumstances warrant that a man's dwelling and property be searched, and that something therein be seized, the law provides a proper remedy, and says how it shall be done—upon a proper search warrant after the matter is submitted to a judicial officer, and because it works a hardship in some cases is no reason why it must not be adhered to in all cases.

Now the first count of the indictment: It appears from the motion the facts were these: That a deputy marshal went to this man's house for the purpose of inquiring if one Arthur Robinson lived there, for whom the marshal had a warrant, and on the defendant Doumain opening the door the deputy marshal

stepped in, saw a lot of bottles and things lying there, and some on the table and some on the floor, which contained liquor, beer of high percentage, and that he called another deputy, and after he got there they both looked around there in his house; then went down and got a warrant for his arrest, I believe, or arrested him right there and took him down.

I hold that what they cannot do with a warrant which is void on its face they cannot do without any kind of a warrant; that is to say, they cannot go there to a man's residence, and rap on the door, and when he is kind enough to open it, to give them the information they desire, they are not warranted in stepping in there and making use of such disclosures as they are able to make under those circumstances, whether he consents to it or not, and prosecute him for a violation of the National Prohibition Act, because it is contrary to the letter and spirit of the law, and an invasion of his private and personal rights and to his property. It is an invasion of his personal security; and I hold that in that matter the evidence thereby obtained ought to be suppressed also.

There are certain things which a man who is looking for a favor from somebody in a house, whether he is an officer or somebody else, should respect, and that is, when a courtesy is extended to him, he should not thereupon make that an excuse for making a trespass; and when the owner of a house is courteous enough to open the door to answer the request of an officer, or any other person, it should not be taken to justify a man outside in pushing himself in and discovering something detrimental to the man who is extending him the courtesy. It is a breach of good faith, and it is, in my judgment, contrary to the spirit of this act, which protects the dwelling house of every person and does not allow it to be searched, except where the house is being used for the unlawful sale of liquor.