**Ira C. ELLISON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 274.**

Supreme Court of Alaska.

June 18, 1963.

Joseph Rudd, Ely, Guess & Rudd, Anchorage, for appellant.

James C. Merbs, Dist. Atty., and Dorothy Awes Haaland, Asst. Dist. Atty., for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This appeal arises out of a conviction of the defendant Ellison for receiving and concealing a sixteen-inch pry bar with knowledge that the bar had been stolen. One of the questions we are asked to decide is whether the evidence upon which the defendant was convicted was procured by an illegal search and seizure in violation of his federal and state constitutional rights and should have been suppressed by the trial court. The defendant's pretrial motion to suppress the use of the crowbar as evidence at the trial was denied below. In ruling upon the motion,

the court had the following factual situation before it for consideration:

About one o'clock on the morning of January 14, 1962, as the defendant was driving an automobile in the City of Anchorage, he was stopped by a police officer and arrested for operating the automobile with a defective headlight in violation of an applicable city ordinance. The defendant had a passenger with him at the time. As the officer was writing out the arrest citation, two other city officers, detectives, appeared on the scene, made a cursory examination of the vehicle, interviewed the occupants, and discovered that the car displayed improper license plates and carried no evidence of ownership registration. The defendant admitted to the officers that he had no registration slip but claimed that he had two days previously purchased the car from a Dean Powers.[1] The detectives immediately checked by radio-telephone with police headquarters and were told that the last registration for the car in question was a year old and showed a person by the name of Booth as owner. On the strength of this additional information, a second citation was written out for operating an unregistered vehicle.[2] This citation was evidently intended to be issued to the defendant, though it bears the name of John R. D. Booth where the name of the person being cited would ordinarily appear and it does not appear in the record that this citation was ever delivered to the defendant or that he was arrested or prosecuted thereunder. The car was then impounded and removed to a storage lot by the officers because of the defective headlight which made it unsafe

to operate. Prior to impounding the car, the officers asked the defendant for the key to the trunk compartment so that they might inspect that, too. The defendant informed them that "he had not been able to open the trunk and the key would not work." Subsequently, whether that same night, the following day or even later, the record does not disclose which, the two detectives went to the lot where the impounded car was stored and apparently without a search warrant opened the trunk compartment by simply lifting up on its lid. In the trunk the officers found the subject pry bar which they seized, along with several other items, as stolen property and held as evidence. The car itself was not held as evidence.

Nowhere in the record is there any indication that the person of the defendant or his passenger was ever searched in connection with this case. Even the glove compartment and the rear seat of the defendant's car were not examined by the officers until after the car had been towed away to the storage lot. The defendant insists that he did not consent to his car being searched and neither the police officers involved nor the state make any claim to the contrary. The occupants of the car were not taken into custody but were permitted to go their way on foot.

The fourth amendment to the federal constitution provides that:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

1. It was later determined that the defendant was the legal owner of the automobile in question and had merely delayed in getting the paper work done in connection with the transfer and registration of title. However, the police officers had no knowledge of the truth of defendant's claim at the time of his arrest and subsequent search of the vehicle.

2. AS 28.10.030 declares the operation of unregistered vehicles to be unlawful, and

section 19-31(a) of the Code of Ordinances of the City of Anchorage provides that "No person shall operate any vehicle, or permit the same to be operated, on any street or highway unless the same complies with the laws of the Territory [State] of Alaska." Penalties for the violation of any city traffic ordinances, not otherwise provided for, are covered by section 19-196 of the Anchorage city ordinances.

affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article I, section 14 of the Alaska constitution is the state counterpart of the fourth amendment and contains an even broader guarantee against unreasonable searches and seizures, for it begins: "The right of the people to be secure in their persons, houses *and other property,* papers, and effects * * *." [Emphasis added.]

■ Before statehood it was the established law in Alaska that evidence obtained by searches and seizures in violation of the federal constitution was inadmissible in the courts of the territory.[3] That legal principle is generally referred to as the federal exclusionary rule and is to be distinguished from the common law rule that the admissibility of evidence is not affected by the illegality of the means through which a party has been enabled to obtain evidence.[4] The common law rule had been followed in many of the state courts and their action in that respect was recognized by the Supreme Court of the United States in Wolf v. Colorado[5] as being no violation of the fourth amendment's guarantee against unreasonable search and seizure.

After statehood Alaska would have been free to retain the federal exclusionary rule or to adopt the rule which obtained at common law[6] except for the fact that in 1961 the Supreme Court saw fit in Mapp v. Ohio[7] to abandon the rule laid down in the Wolf case and to announce a new rule in language as follows:

"Today we once again examine Wolf's constitutional documentation of the right to privacy free from unreasonable state intrusion, and, after its dozen years on our books, are led by it to close the only courtroom door remaining open to evidence secured by official lawlessness in flagrant abuse of that basic right, reserved to all persons as a specific guarantee against that very same unlawful conduct. We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court."[8]

■ Thus the Supreme Court has in effect declared that the exclusionary rule, which it previously regarded as a rule of evidence,[9] now operates as a constitutional mandate upon the state courts. Since the Mapp opinion states that the interrelationship of the fourth amendment and the due process clause of the fourteenth amendment, guaranteeing to individuals the right of privacy free from unreasonable state intrusion, renders evidence obtained by unreasonable search and seizure inadmissible in a state criminal prosecution based thereon,[10] we have but to determine whether the pry bar here involved was secured by an

3. United States v. Pappadementro, 6 Alaska 769 (D.C.Alaska 1922); United States v. Doumain, 7 Alaska 31 (D.C.Alaska 1923).

4. The conflicting rules governing the admissibility, at the trial of a criminal case, of evidence obtained by unlawful search and seizure are discussed in an annotation in 50 A.L.R.2d 531 (1956). But see Annot., 84 A.L.R.2d 959 (1962).

5. 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

6. The reiteration in our state constitution of the principles expressed in the fourth amendment would undoubtedly have weighed heavily in favor of Alaska abiding by the federal exclusionary rule.

7. 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961).

8. Mapp v. Ohio, 367 U.S. 643, 654–655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1089–1090, 84 A.L.R.2d 933 (1961).

9. In Elkins v. United States, 364 U.S. 206, 216, 80 S.Ct. 1437, 4 L.Ed.2d 1669, 1677 (1960), the Supreme Court said that its power to rule evidence unlawfully obtained inadmissible in a federal criminal trial stems from the Court's supervisory power over the administration of criminal justice in the federal courts under which the Court has, from the beginning of its history, formulated rules of evidence to be applied in federal criminal prosecutions.

10. Supra n. 8, 367 U.S. at 655, 81 S.Ct. at 1691, 6 L.Ed.2d at 1090.

unreasonable search and seizure as claimed by the defendant.

[3, 4] There seems to be no exact formula for the determination of reasonableness in connection with a search and seizure and so each case must be decided on its own facts and circumstances.[11] Matching all the facts and circumstances of this case, as related earlier in this opinion, against the foregoing applicable principles of law and constitutional provisions, we are compelled to the conclusion that the search and seizure of the pry bar was unreasonable and that it was reversible error for the trial court to deny the motion to suppress the pry bar as evidence.

That there is a permissive area of search without a search warrant beyond the person proper is recognized by the Supreme Court in the following pronouncement:

> "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted. * * * [Citing two earlier Supreme Court cases.]"[12]

The record before us does not disclose what, if anything in particular, the officers were looking for when, at the time of citing and arresting the defendant for driving with a defective headlight, they asked him for the key to the trunk compartment of his car, or when they later went to the storage lot and searched the trunk compart-ment. Obviously, they were not searching for weapons which the defendant might have used to prevent his arrest or effect his escape or, it stands to reason, they would have searched his person for weapons at the time they first encountered him. Nor can it be fairly said they were looking for evidence of defective equipment as they already had that. Similarly, assuming for the sake of argument that the officers had also cited and arrested the defendant for operating an unregistered vehicle, they cannot be heard to say that they were searching for evidence of improper registration and possible theft of the car. If that had been their true objective, they would at least have looked for a registration certificate in the glove compartment, behind the sunvisor and on the steering post when first informed by the defendant that he had just recently purchased the car and did not yet have a registration certificate for it. Furthermore, the officers seem to have made little or no effort, either before or after they found and seized the pry bar, to contact the man Booth, the last registered owner of the car according to their own records, to determine from him the true state of the title to the car and whether it had been stolen.

In the light of such facts and circumstances we can only surmise that the police officers were conducting a search for some other purpose than uncovering evidence that would connect the defendant with the traffic violation. Such a search they had no lawful right to make under the circumstances stated.[13]

The trial judge seems to have sensed that the true objective of the search by the officers did not relate to the traffic violation,

---

11. United States v. Rabinowitz, 339 U.S. 56, 63, 70 S.Ct. 430, 94 L.Ed. 653, 659 (1950); People v. Rucker, 197 Cal.App. 2d 18, 17 Cal.Rptr. 98, 100 (1961).

12. Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145, 148, 51 A.L.R. 409 (1925).

13. Go-Bart Importing Co. v. United States, 282 U.S. 344, 357–358, 51 S.Ct. 153, 75 L.Ed. 374, 382–383 (1931);

United States v. Lefkowitz, 285 U.S. 452, 461–462, 52 S.Ct. 420, 76 L.Ed. 877, 881, 82 A.L.R. 775 (1932); and see Taglavore v. United Sates, 291 F.2d 262, 265–266 (9th Cir., 1961), an Alaska case in which the appellate court found that a traffic warrant was being used as a mere excuse to search appellant for marijuana cigarettes, he being suspected of being connected with certain illegal narcotic activities of his employer.

when he commented from the bench on matters dehors the record as follows:

> "And in talking about what is reasonable or not reasonable, an officer is entitled to know what—entitled to the benefit of his own knowledge. Now it is common knowledge that this particular defendant has been many times charged with crimes in the last two or three years. And up until now he has not been convicted of anything in this area. On the other hand, the officers can not help but know that Mr. Ellison has been traveling with a very, very bad crowd for a considerable period of time. Fact of the matter is he was on the fringes of one of these search and seizure cases that I had previously. And that search and seizure also involved a automobile or two automobiles; involved the same officers that we're dealing with here * * *. Involved, incidentally, automobiles that were under the possession of Dean Powers. * * * Most certainly the officers had every right to be suspicious when they found this man driving a car that on the face of it was not his car * * *. A car was being driven on the road without proper registration and with no showing at all as to why the registration was improper. * * * Certainly the officers had a right to be suspicious. I'm impressed also with the fact that if I were an officer under these circumstances and knowing the reputation of the man we were dealing with here as well as the fact that they were responsible for this car, I think they'd had holes in their head had they not examined the automobile. * * *"[14]

 We are aware that police officers are occasionally faced with sudden and unexpected situations in which they may reasonably conduct a search without a search warrant and apart from a contemporaneous arrest, as in the case of a moving vehicle, but the burden is upon them to demonstrate the compelling reasons which justified the search.[15] In the instant case the state makes no claim that an emergency existed calling for a search of the trunk compartment of the defendant's car without a search warrant, nor do we find that the situation reasonably required such a search.

In view of our conclusion that the trial court erred in denying the defendant's motion to suppress, we need not consider other

14. It is not clear from the record on what theory the trial judge actually held the search of the trunk compartment to have been reasonable, for his oral remarks include this observation: "However, I suspect that in this case they [the officers] weren't actually looking for anything at all so far as Ellison is concerned. I suspect that what they were really doing was trying to protect themselves against a claim that they had stolen a lot of stuff out of his car if something turned out to be missing." The state seems to have laid no store by the trial judge's self protection theory for the search, at least the state has not argued the point on appeal and we find no merit in it.

15. In McDonald v. United States, 335 U.S. 451, 455–456, 69 S.Ct. 191, 193, 93 L.Ed. 153, 158 (1948), Justice Douglas, speaking for the Supreme Court, stated: "The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. Power is a heady thing; and history shows that the police acting on their own cannot be trusted. And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." Justice Frankfurter, dissenting in United States v. Rabinowitz, 339 U.S. 56, 73, 70 S.Ct. 430, 438, 94 L.Ed. 653, 664 (1950), wrote: "Even as to moving vehicles, this Court did not lay down an absolute rule dispensing with a search warrant. It limited dispensation to the demands of necessity, where want of time precluded the obtaining of a warrant."

alleged errors. The judgment is reversed and the case remanded to the superior court with instructions to vacate the judgment of conviction and commitment and to enter a judgment of acquittal.