**Donald E. SCHULTZ, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 4152.

Supreme Court of Alaska.

April 20, 1979.

---

4. See the concurring opinion of Brennan, J., 433 U.S. at 16, 97 S.Ct. 2476.

Dick L. Madson, Cowper & Madson, Fairbanks, for appellant.

Thomas M. Jahnke, Asst. Dist. Atty., and Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER and MATTHEWS, JJ., and DIMOND, Senior Justice.

DIMOND, Senior Justice.

A fire was discovered in Schultz's house.[1] Shortly after 8:50 a. m., Fairbanks firefighters were at the scene commencing their operations to extinguish the fire. At about 9:00 a. m., Fire Inspector Ardith Robinson arrived at the house. She entered the house between 9:15 and 9:30 a. m., at which time the fire was under control but not yet extinguished. Inspector Robinson's entry was solely for the purpose of ascertaining

---

1. Prior to the fire, Schultz had agreed to sell his house. The prospective buyer was cleaning the premises and had secured the house with his own padlock. We shall assume that Schultz, nevertheless, had sufficient control over the house to have a reasonable expectation of privacy in it so as to give him standing to challenge the seizure of evidence from the premises.

the cause of the fire, and not to help in putting it out. During her investigation, which lasted nearly one and one-half hours, she took about 70 photographs and seized several items of physical evidence.[2] She did not have a search warrant.

Schultz was convicted of first-degree arson after a trial by jury. On appeal, he claims that his constitutional rights to privacy,[3] and to be free of unreasonable searches and seizures,[4] were violated by the introduction into evidence of certain items seized and of photographs taken by Inspector Robinson during her warrantless search of the premises.

Article I, section 14, of the Alaska Constitution provides:

> The right of the people to be secure in their persons, houses and other property, papers and effects, against unreasonable searches and seizures, shall not be violated.[5]

In construing this constitutional provision we have repeatedly stated that " 'a search without a warrant is per se unreasonable unless it clearly falls within one of the narrowly defined exceptions to the warrant requirement.' "[6] The reason for this is that the primary purpose of this constitutional provision, together with the explicit guarantee of the right to privacy in article I, section 22, of the Alaska Constitution, is the "protection of 'personal privacy and dignity against unwarranted intrusion by the State,' "[7] or other governmental officials.

Such a construction of article I, section 14, of the Alaska Constitution has been largely done in the context of searches and seizures by police officers seeking to obtain evidence to be used against an accused in a criminal prosecution. But we have also extended the protection of this constitutional provision in cases of administrative searches and seizures. In *Woods & Rohde, Inc. v. State Department of Labor*, 565 P.2d 138 (Alaska 1977), we held that a search warrant is required in the making of inspections of business premises pursuant to the State Occupational Safety and Health Act. We stated in that case that the "owner of business premises is deserving of . . . the significant constitutional solicitude and protection afforded Alaska's citizen in criminal prosecutions."[8]

To the same extent, a person's privacy and security must be safeguarded against arbitrary invasions by other governmental officials, such as fire inspectors. The rule is the same here as in the case of invasions by police officers and building and health inspectors, i. e., that, except in narrowly-defined classes of cases, the provisions of article I, section 14, of the Alaska Constitution stand for the proposition that a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant.

The narrowly-defined classes of cases which justify invasion of privacy without a warrant are those instances where there is a "compelling need for official action and no time to secure a warrant."[9] That was the situation here when it was discovered that Schultz's house was on fire. In the language of the United States Supreme Court in *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486, 498 (1978):

> houses, papers and effects, but also to "other property."

**2.** Of the items seized, two burned cans that presumably had contained an inflammable liquid were introduced as evidence.

**3.** Alaska Const. art. I, § 22.

**4.** U.S. Const., Amend. IV, as applied to the states by Amend. XIV; Alaska Const. art. I, § 14.

**5.** This requirement is substantially the same as the fourth amendment to the United States Constitution. The only difference is that the Alaska constitutional provision is broader in extending its protection, not only to persons,

**6.** *Woods & Rohde, Inc. v. State Department of Labor*, 565 P.2d 138, 149 (Alaska 1977).

**7.** *Weltz v. State*, 431 P.2d 502, 506 (Alaska 1967).

**8.** *Woods & Rohde, Inc. v. State Department of Labor*, 565 P.2d 138, 151 (Alaska 1977).

**9.** *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486, 498 (1978).

A burning building clearly presents an exigency of sufficient proportions to render a warrantless entry "reasonable." Indeed, it would defy reason to suppose that firemen must secure a warrant or consent before entering a burning structure to put out the blaze. And once in a building for this purpose, firefighters may seize evidence of arson that is in plain view. *Coolidge v. New Hampshire*, 403 U.S. 443, 465–66, 91 S.Ct. 2022, 29 L.Ed.2d 546, 582–83 (1971).

Furthermore, the exigency justifying the entry of Schultz's house by the fire officials, and seizure of evidence indicating arson, did not end when the fire was contained or under control, or even when the last burning ember was thought to be extinguished. As the United States Supreme Court has stated in *Tyler*:

Fire officials are charged not only with extinguishing fires, but with finding their causes. Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction. And, of course, the sooner the officials complete their duties, the less will be their subsequent interference with the privacy and recovery efforts of the victims. For these reasons, officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished. And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional.[10]

In the case at hand, Inspector Robinson's entry into Schultz's house took place within 25 to 40 minutes after the firefighters had arrived at the scene, when the fire was under control but not entirely extinguished. It was Inspector Robinson's specific duty to attempt to discover the cause of the fire. Her entry into the building at that time, and her remaining in the building for one to one and one-half hours, were well within a "reasonable time"[11] to investigate the cause of the fire without the necessity of first securing a warrant.

The distinction that Schultz attempts to make—that the *Tyler* case speaks of firefighters remaining on the premises, whereas here Inspector Robinson entered shortly after the fire was under control— has no merit. The overriding concern, both in *Tyler* and in this case, was fire safety, i. e., discovering the cause of the fire. And since Inspector Robinson's entry into the house without a warrant was lawful, her photographing of the premises and seizing of evidence was lawful. This is so because the premises she photographed and the objects she seized were in plain view. *Coolidge v. New Hampshire,* 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564, 582–83 (1971); *Daygee v. State,* 514 P.2d 1159, 1162 (Alaska 1973). The superior court was correct in denying Schultz's motion to suppress the items seized and the photographs taken during Inspector Robinson's initial search.

Inspector Robinson left the house about 10:45 a.m. At 1:00 p.m. on the same day, she and Fire Inspector Morris returned to the house to continue the investigation. Schultz was present then and cooperated with the inspectors, but he did not specifically consent to their entry into his house. During this visit, Inspector Morris took some additional photographs. While he and Inspector Robinson were inside, Fairbanks Police Detective Keller arrived. He, too, entered the house without Schultz's consent, seized evidence and took photographs.

---

**10.** 436 U.S. 499, 510, 98 S.Ct. 1942, 1950–51, 56 L.Ed.2d 486, 498–99 (1978) (footnote omitted).

**11.** In *Tyler*, the Supreme Court said:
In determining what constitutes a "reasonable time to investigate," appropriate recognition must be given to the exigencies that confront officials serving under these conditions, as well as to individuals' reasonable expectations of privacy.
*Michigan v. Tyler*, 436 U.S. 499, 510 n. 6, 98 S.Ct. 1942, 1950–51 n. 6, 56 L.Ed.2d 486, 499 n. 6 (1978).

**644**

Schultz's motion to suppress included the photographs taken and the items seized during this second search in the afternoon. The court granted the motion as to the evidence obtained by Detective Keller, but denied it as to the photographs taken by Inspector Morris.

 Whether the afternoon investigation, or search, was reasonable, considered in the context of the investigation and Schultz's reasonable expectations of privacy in these circumstances, we need not decide. The only fruits of the afternoon search that were used at trial were two photographs, one showing an overall view of the exterior of the house and the other depicting the condition of the top side of the stairway. If the trial court erred in allowing the use of these photographs, the error was harmless, since the morning search, which we have held was proper, produced all the physical evidence introduced and 17 of the 19 admitted photographs. The two photographs taken in the afternoon had no direct effect on the outcome of the case.

The judgment of conviction is affirmed.

BURKE, J., not participating.