David NEVERS, Appellant,

v.

STATE of Alaska, DEPARTMENT OF ADMINISTRATION, Division of Motor Vehicles, Appellee.

No. S–11399.

Süpreme Court of Alaska.

Oct. 28, 2005.

Rehearing Denied Dec. 15, 2005.

---

These states include Arizona, Colorado, Illinois, Kentucky, Oregon, South Dakota, and Washington. *Id.* at n. 26.

**33.** *Id.*

Verne Rupright and Tena Foster, Rupright & Foster, L.L.C., Wasilla, for Appellant.

Richard W. Postma, Jr., Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

After an Alaska state trooper stopped a car for a broken headlight on the Parks Highway, the driver fled the scene on foot. The police eventually tracked him to a Wasilla residence. Officers entered the home without a warrant and arrested the driver for driving while intoxicated. The driver refused to submit to a chemical breath test, and the Division of Motor Vehicles revoked his license for three years. The driver appeals, challenging the warrantless entry and search of his home as violations of the Fourth Amendment of the United States Constitution and article I, sections 14 and 22 of the Alaska Constitution, and arguing that evidence obtained against him as a result of the search must be suppressed pursuant to the exclusionary rule. The hearing officer ruled that the exclusionary rule does not apply to license revocation proceedings. The superior court affirmed. Because we hold that the exclusionary rule does not apply to driver's license revocation proceedings, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

At about 7:20 p.m. on March 2, 2002, Alaska State Trooper Nathan Bucknall observed a red Subaru with a broken headlight. Trooper Bucknall attempted to stop the vehicle, giving chase for a quarter mile as the vehicle swerved across both lanes of traffic. The Subaru then pulled over onto the shoulder and drove for another one-to two-hundred feet, at which point the driver stopped

the car and fled on foot. The Subaru was registered to David Nevers.

Trooper Bucknall found two male passengers inside the vehicle, Jon Fleming and Robert Kull. The car smelled of alcohol and was littered with beer cans and bottles. Both passengers smelled of alcohol, had bloodshot and watery eyes, and swayed when talking to the officer. Upon questioning, Fleming stated that he did not know the driver, and Kull explained that they had been picked up while hitchhiking home. Fleming appears to have been less than truthful about not knowing the driver. David A. Nevers, who the police later identified as the driver, was renting a room in Fleming's house.

Trooper Bucknall took Fleming into custody based on an existing warrant for his arrest, while Trooper Doug Cook, who had arrived on the scene within two to three minutes of the stop, tracked the driver by following his footprints in the snow. While following these tracks Trooper Cook found a three-day non-resident fishing license issued to David A. Nevers lying in the snow. After following the footprints for one hour and fifteen minutes, Trooper Cook reached the front parking lot of a bar. The bartender said that a person matching the description of the driver of the Subaru had come into the bar and called for a cab, saying that his car had broken down a few miles away. The individual had a gash across his nose and told the bartender that he was from New Hampshire. Trooper Cook conveyed this information to Trooper Bucknall.

After arresting Fleming on the existing warrant, Trooper Bucknall drove to the Wasilla address where the cab company had dropped off the suspect. At the address, Trooper Bucknall observed tracks matching those of the driver of the red Subaru leading to an open back door which led into an attached garage. Bucknall learned from a passerby that the house belonged to Jon Fleming. Trooper Bucknall, joined by Wasilla police officers, knocked on the garage door and, when nobody answered, he entered the garage and then knocked on the house door inside the garage. Receiving no re-sponse, Trooper Bucknall and the Wasilla police officers entered the residence and conducted a room-to-room search.

The officers found an individual asleep on the couch in the front room of the house. Trooper Bucknall recognized the person as the driver of the red Subaru. The individual presented a New Hampshire driver's license that identified him as David A. Nevers. The officers also found fresh vomit in the bathroom and observed that Nevers's boots were wet.

Trooper Bucknall questioned Nevers, who denied that he had been driving that night but also said that his car had not been stolen. Nevers said he had been drinking at home and had placed the empty beer cans with the garbage at the front of the house. However, Trooper Bucknall reported that he found only one empty alcohol container, an old beer can, on the front porch, and that the garbage bags were old, undisturbed and covered with snow.

Trooper Bucknall gave Nevers a field sobriety test at roughly 9:40 p.m. Nevers had trouble standing and understanding instructions. Nevers passed the alphabet test but failed to complete the numbers test, and submitted to a portable breath test at 9:48 p.m., roughly two hours and eighteen minutes after the initial stop. The portable test disclosed a breath alcohol concentration of 0.158%. Bucknall then arrested Nevers for driving while intoxicated (DWI),[1] and the officers had to use pepper-spray on Nevers because he became belligerent and combative, threatening to kill the officers. Bucknall took Nevers to the Alaska State Troopers' Palmer Post for a Datamaster breath alcohol concentration test, but Nevers refused to give an adequate breath sample[2] at 10:37 p.m., which was only forty-three minutes from expiration of the four-hour limit provided by AS 28.35.030(a)(2). Bucknall then charged Nevers with refusal to provide a breath sample and read him a Notice and Order of Revocation.

---

**1.** AS 28.35.030(a).

**2.** AS 28.35.032(a).

## B. Proceedings

The Division of Motor Vehicles administratively revoked Nevers's license to drive. Nevers sought administrative review of the department's action under AS 28.15.166. Nevers appeared before hearing officer Rebecca Janik and argued that the evidence seized at the house, namely his breath sample, should be excluded because "[t]he police entered [Nevers's] home without consent, without a warrant, there were no exigent circumstances, and interdicted him nearly two hours after they suspected he was the person that fled the vehicle by the side of the road." Nevers argued that because warrantless entry into a home is *per se* unreasonable, the search was improper absent either exigent circumstances or some other exception to the warrant requirement. Nevers maintained that because exigent circumstances did not exist and no other exception applied, the evidence must be suppressed.

Relying on AS 28.15.166(g), the hearing officer ruled that the administrative hearing was limited to two principal issues: whether the arresting officer had probable cause to believe that Nevers was driving and whether Nevers refused a breath test. The hearing officer ruled that constitutional issues could not be raised in an administrative hearing. Because the hearing officer found that the trooper had reasonable grounds to conclude that Nevers operated a motor vehicle while under the influence, and that he refused the breath test, she found that the division's decision to suspend Nevers's license should be affirmed. Despite her ruling that constitutional issues cannot be raised at an administrative hearing, the hearing officer nevertheless made alternative findings regarding Nevers's constitutional claims. First, she held that Nevers lacked standing to raise the claim that the police entered his house without authority to do so because he was not arrested in the room he rented. Second, she

held that the police were in hot pursuit and thus the entry and search fell under a valid exception to the warrant requirement. Because Nevers had two prior DWI convictions, the hearing officer revoked his license for three years.[3]

Nevers appealed the decision to the superior court and renewed his constitutional arguments. Relying on *State v. Sears*,[4] the court held that the exclusionary rule does not apply to license revocation hearings except where police conduct "shocks the conscience." Finding that it appeared that "the officers in good faith acted in investigating the incident in what they reasonably believed was a prudent and appropriate manner," the superior court affirmed the hearing officer's decision.

Nevers appeals.

## III. STANDARD OF REVIEW

■ We review license revocation hearings under AS 28.15.166(m), which provides that the court may "reverse the department's determination if the court finds that the department misinterpreted the law, acted in an arbitrary and capricious manner, or made a determination unsupported by the evidence in the record."[5] Where the superior court acts as an intermediate court of appeals, we independently review the hearing officer's decision.[6] For legal questions not involving agency expertise, we apply the "substitution of judgment" standard.[7] We also review constitutional questions *de novo*,[8] and will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[9]

## IV. DISCUSSION

**The Fourth Amendment Exclusionary Rule Is Inapplicable to License Revocation Hearings.**

Nevers maintains that evidence procured by the officers' warrantless entry and search

---

3. AS 28.15.165(d) incorporates AS 28.15.181(c)'s requirement that a third DWI offense results in a three-year minimum license revocation.

4. 553 P.2d 907 (Alaska 1976).

5. *Saltz v. State, Dep't of Pub. Safety*, 942 P.2d 1151, 1152 n. 2 (Alaska 1997) (citing *Miller v. State, Dep't of Pub. Safety*, 761 P.2d 117, 118 n. 2 (Alaska 1988)).

6. *Pasco v. State, Dep't of Admin.*, 45 P.3d 325, 326 (Alaska 2002).

7. *Id.*

8. *Id.*

9. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

of the home should be excluded because the search violated "fundamental rights" under the United States and the Alaska Constitutions. Although he does not cite specific constitutional provisions, we assume that he relies upon the Fourth Amendment to the United States Constitution [10] and article I, sections 14 [11] and 22 [12] of the Alaska Constitution.

The United States Supreme Court has long held that absent exigent circumstances or some other exception, warrantless police searches or seizures are *per se* unreasonable.[13] Thus, evidence obtained from an unconstitutional search or seizure is inadmissible and must be excluded.[14] As the search

and seizure protections under the Alaska Constitution are broader than those under the Federal Constitution,[15] we base our decision in this case on the Alaska Constitution.

The state argues that Nevers may not challenge revocation of his license on Fourth Amendment grounds because such claims are outside the scope of license revocation hearings.[16] The state bases its argument on AS 28.15.166(g), which it claims limited the scope of revocation hearings to two issues: (1) whether the law enforcement officer had probable cause to believe that Nevers was driving a motor vehicle while under the influence, and (2) whether Nevers refused to take a statutorily-authorized chemical test.[17] It

---

**10.** The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**11.** Article I, section 14 provides:

The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

This right is "substantially the same" as the Fourth Amendment to the federal constitution, but has broader coverage in that it also protects "other property." *Schultz v. State*, 593 P.2d 640, 642 n. 5 (Alaska 1979); *Ellison v. State*, 383 P.2d 716, 718 (Alaska 1963).

**12.** Article I, section 22 provides that "[t]he right of the people to privacy is recognized and shall not be infringed." We have recognized that where a search is alleged to be unconstitutional, section 14's standards for a proper search and seizure are "inexorably entwined" with section 22's privacy protections. *Anchorage Police Dep't Employees Ass'n v. Municipality of Anchorage*, 24 P.3d 547, 550–51 (Alaska 2001) (citing *Woods & Rohde, Inc. v. State, Dep't of Labor*, 565 P.2d 138, 150–51 (Alaska 1977)).

**13.** *See, e.g., Illinois v. Rodriguez*, 497 U.S. 177, 191, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) ("a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable unless the police can show that it falls within one of a carefully defined set of exceptions") (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474, 91 S.Ct. 2022, 29 L.Ed.2d 564

(1971)); *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (" 'at the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' … Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.") (quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)).

**14.** *See, e.g., Ellison*, 383 P.2d at 718 (exclusionary rule applicable to state courts) (discussing *Mapp v. Ohio*, 367 U.S. 643, 654–55, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)).

**15.** *Anchorage Police Dep't Employees Ass'n*, 24 P.3d at 550.

**16.** This is a question of first impression. In prior cases we did not consider whether the exclusionary rule could be applied for search and seizure violations in license revocation hearings. *See Fraiman v. State, Dep't of Admin.*, 49 P.3d 241, 244 (Alaska 2002); *Miller v. State, Dep't of Public Safety*, 761 P.2d 117 (Alaska 1988). Because we believe a decision will provide guidance to litigants and hearing officers on a recurring issue, we now reach this issue.

**17.** AS 28.15.166(g) states in relevant part:

The hearing for review of action by the department under AS 28.15.165 shall be limited to the issues of whether the law enforcement officer had probable cause to believe that the person was operating a motor vehicle or commercial motor vehicle that was involved in an accident causing death or serious physical injury to another, or that the person was operating a motor vehicle, commercial motor vehicle, or aircraft while under the influence of an alcoholic beverage, inhalant, or controlled substance in violation of AS 28.33.030 or AS 28.35.030 and whether

also relies upon our decision in *State v. Sears*, where we held that the Alaska Constitution does not require the exclusion of illegally secured evidence in probation revocation hearings.[18] However, we noted in *Sears* that we would apply the exclusionary rule in two situations. First, we held that judicial integrity required application of the rule where the police engaged in conduct that "shocks the conscience."[19] Second, we noted that if the police "consciously directed" an unconstitutional search or arrest toward someone they knew was a probationer, we would apply the exclusionary rule because in such circumstances the police would have an incentive to engage in unlawful searches that required the rule's tempering effect.[20] The state maintains that license revocation hearings are comparable to probation revocation proceedings, and therefore argues that *Sears*

> (1) the person refused to submit to a chemical test authorized under AS 28.33.031(a) or AS 28.35.031(a) or (g) after being advised that refusal would result in disqualification or the suspension, revocation, or denial of the person's license, and that the refusal is a misdemeanor;
> (2) the chemical test administered under AS 28.33.031(a) or AS 28.35.031(a) or (g) produced a result described in AS 28.35.030(a)(2); or
> (3) the chemical test administered under AS 28.33.031(a) produced a result described in AS 28.33.030(a)(2).

18. *State v. Sears*, 553 P.2d 907, 912–14 (Alaska 1976). *Sears* also held that former Criminal Rule 26(g), which governed the exclusionary rule in criminal proceedings, was inapplicable to probation revocation proceedings. *Id.* at 909–11. Evidence Rule 412 replaced former Criminal Rule 26(g) by Supreme Court Order on August 1, 1979, the day the Alaska Rules of Evidence went into effect. *Harker v. State*, 663 P.2d 932, 934 n. 3 (Alaska 1983). Evidence Rule 412 is similarly inapplicable to informal license revocation hearings, where the rules of evidence do not apply. AS 28.05.141(a); *Glascock v. State, Dep't of Pub. Safety*, 890 P.2d 65, 67 (Alaska 1995).

19. *Sears*, 553 P.2d at 912–14.

20. *Id.* at 914.

21. We recognize that there may be two exceptions to our conclusion that the exclusionary rule is inapplicable in license revocation proceedings. First, where a Fourth Amendment violation stems from a lack of probable cause for a DWI arrest, exclusion may well be mandated because probable cause is an affirmative statutory ele-

prevents Nevers from raising the exclusionary rule. We agree.[21]

In this case, as in *Sears*, determining whether to apply the exclusionary rule requires balancing the costs of applying the rule against its benefits.[22] On the cost side of the equation, application of the exclusionary rule to license revocation hearings will in some cases frustrate the important state interest in keeping drunk drivers off the road by excluding pertinent evidence.[23] Moreover, enforcement of the rule in license revocation proceedings will significantly increase the administrative burden of what is intended to be an informal process;[24] indeed, hearing officers in Alaska need not even be lawyers.[25] It can also be expected that applying the exclusionary rule to license revocation hearings will result in longer and more complicated hearings in many cases.

ment of the offense of refusal and is an affirmative element for proof in the license revocation proceeding. Second, since the implied consent statutes prohibit further blood or breath tests in the event of a refusal (except in certain specified situations) a search for blood evidence in direct violation of these statutory prohibitions would probably require exclusion of the test results in a subsequent administrative license revocation proceeding that was based on the result of the impermissible blood test. *See* cases *infra* n. 29.

22. *Sears*, 553 P.2d at 912; *see also United States v. Janis*, 428 U.S. 433, 453–54, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) ("we conclude that exclusion from federal civil proceedings of evidence unlawfully seized by a state criminal enforcement officer has not been shown to have a sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal costs imposed by the exclusion.").

23. *See Tornabene v. Bonine ex rel. Arizona Highway Dep't*, 203 Ariz. 326, 54 P.3d 355, 362 (App. 2002); *Chase v. Neth*, 269 Neb. 882, 697 N.W.2d 675, 684–85 (2005).

24. *See Powell v. Sec'y of State*, 614 A.2d 1303, 1307 (Me.1992) (application of exclusionary rule would "unnecessarily complicate and burden" administrative proceeding); *Riche v. Dir. of Revenue*, 987 S.W.2d 331, 334 (Mo.1999).

25. AS 28.05.141(a) states in relevant part:

Hearings must be informal, and technical rules of evidence do not apply.... A hearing officer need not be an attorney, but must be impartial and may not have participated in the decision that is under review.

■ When measuring the benefits of applying the exclusionary rule, we look mainly to its ability to deter unlawful police conduct.[26] In driver's license revocation cases, as in *Sears*, we do not believe that applying the exclusionary rule for search and seizure violations would add significant deterrence because the police are already sufficiently deterred from such unlawful conduct by the applicability of the exclusionary rule to all criminal cases that may result from their investigations.[27] Thus, because we believe that the benefits of extending the rule are marginal and that the costs would be substantial, we join the majority of jurisdictions and hold that the exclusionary rule is inapplicable to search and seizure violations in administrative license revocation hearings.[28] While a minority of courts have reached the opposite conclusion, we decline to follow these cases because they involve statutory regimes that differ from ours,[29] assume without discussion that the exclusionary rule applies to license revocation hearings,[30] or reflect a different judgment as to the exclusionary rule's deterrent effect.[31]

■ Although we conclude that the exclusionary rule generally does not apply to license revocation proceedings, we maintain intact the exceptions set out in *Sears:* We may apply the exclusionary rule to "police misconduct which shocks the conscience, or is of a nature that calls for the judiciary, as a matter of judicial integrity, to disassociate itself from benefits derivable therefrom...."[32] We believe that these exceptions, when combined with the deterrent effect already provided by the exclusionary rule in criminal proceedings, are sufficient to protect the public and deter unlawful police activity.

Nevers argues that this case falls under the second exception to *Sears*—action consciously directed against the defendant—and relies on *Joubert v. State*.[33] In *Joubert* the court of appeals excluded illegally seized evidence in a probation hearing because the search had been "consciously directed" toward the probationer and toward "uncovering evidence for use in a probation revocation proceeding."[34] Given the probation officer's involvement in the search (from initiating the search to participating in it), the government's attempt to justify the illegal search under a condition of probation, and the fact that the only action taken by the government after discovering cocaine was to file a petition

**26.** *Sears*, 553 P.2d at 912. *See also Janis*, 428 U.S. at 454, 96 S.Ct. 3021 ("the 'prime purpose' of the rule, if not the sole one, 'is to deter future unlawful police conduct.' ") (quoting *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)).

**27.** *See Tornabene*, 54 P.3d at 365–66 ("[I]t strikes us as extremely unlikely that officers would [conduct illegal stops] merely with the hope of obtaining license suspensions, knowing that evidence of intoxication obtained from such an encounter would be inadmissible in any criminal DUI prosecution and that clearly impermissible police conduct could subject officers to civil liability. *See* 42 U.S.C. § 1983."); *see also Janis*, 428 U.S. at 448, 96 S.Ct. 3021 (extending exclusionary rule to civil tax proceeding is unnecessary because police are sufficiently deterred from unlawful conduct by exclusionary rule in state and federal criminal proceedings).

**28.** *See Chase*, 697 N.W.2d at 683–84 (noting that majority of courts to consider issue have not applied exclusionary rule to license revocation hearings, adopting majority position, and listing cases). *Accord Tornabene*, 203 Ariz. 326, 54 P.3d 355; *Fishbein v. Kozlowski*, 252 Conn. 38, 743 A.2d 1110 (1999); *Powell*, 614 A.2d 1303; *Riche*, 987 S.W.2d 331; *Jacobs v. Dir., N.H. Div. of Motor Vehicles*, 149 N.H. 502, 823 A.2d 752 (2003). *See generally* Thomas M. Fleming, Annotation, *Admissibility, in Motor Vehicle Licensing Suspension Proceedings, of Evidence Obtained by Unlawful Search and Seizure*, 23 A.L.R. 5th 108 (1994).

**29.** *People v. Krueger*, 208 Ill.App.3d 897, 153 Ill.Dec. 759, 567 N.E.2d 717 (1991) (statutory language required application of exclusionary rule in license revocation proceeding); *Pooler v. Motor Vehicles Div.*, 306 Or. 47, 755 P.2d 701 (1988) (same).

**30.** *Olson v. Comm'r of Pub. Safety*, 371 N.W.2d 552 (Minn.1985).

**31.** *State v. Lussier*, 171 Vt. 19, 757 A.2d 1017 (2000). We also note that, contrary to the situation in Alaska, the venue in Vermont for a civil driver's license suspension hearing is the district court. *Id.* at 1018.

**32.** *Sears*, 553 P.2d at 914.

**33.** 926 P.2d 1191 (Alaska App.1996).

**34.** *Id.* at 1195.

to revoke probation, the court of appeals concluded that "the sole apparent purpose of the search conducted ... was to find evidence that Joubert had violated the conditions of his probation."[35] These factors distinguish *Joubert* from Nevers's situation. In this case, the officer pulled Nevers over for driving with a burnt-out headlight. After seeing Nevers flee from the scene on foot and after discovering the strong odor of alcohol inside the vehicle, along with the numerous beer containers, the officer could have reasonably suspected Nevers of DWI or other criminal behavior, and accordingly initiated a criminal investigation—that is, an investigation designed to yield evidence for a criminal proceeding. While the search of the house in which Nevers was renting a room may have ultimately been performed unlawfully—an issue upon which we express no opinion[36]—the record shows that it was done pursuant to this criminal investigation, in contrast to *Joubert* where it was clear that the officers' primary motive was to seize evidence for use in a probation hearing. Nevers must do more than simply cite to *Joubert*; he must show that the officers in this case, like the officers in *Joubert*, acted with the purpose of seizing evidence for use in a civil hearing. Because he has not even made this suggestion, his argument must fail. Simple awareness of the fact that a suspect may be subject to a civil proceeding is not enough to require application of the exclusionary rule. Allowing defendants to invoke the exclusionary rule whenever an officer may have known that the suspect could be subject to some civil proceeding would turn the phrase "consciously directed" into mere surplusage. We therefore reject Nevers's argument that *Joubert* is persuasive in this case.

■ Nevers also relies on *Whisenhunt v. State, Department of Public Safety*,[37] where we applied the exclusionary rule in a civil license revocation proceeding to exclude a breathalyzer test secured in violation of the right to counsel.[38] Noting that drivers have an "important property interest" in their licenses and that in many cases the license revocation is the "most important and long-lasting sanction imposed on the defendant," we rejected the state's argument that *Sears* precluded application of the exclusionary rule to license revocation hearings where the right to counsel was violated.[39] However, *Whisenhunt* is part of a series of cases where we required that license revocation hearings meet standards of procedural fairness; these decisions were designed to ensure that drivers be accorded fair and meaningful hearings. Accordingly, we have held that due process forbids the state from denying drivers in-person revocation hearings when credibility is at issue,[40] that it requires that the state preserve sobriety test videotapes[41] and breath test samples,[42] and that it requires hearing officers to determine whether a defendant was actually driving the motor vehicle.[43] These decisions involved the procedural protections necessary to preserve defendants' right to a fair hearing.[44] Violations of the Fourth Amendment, on the other hand, do not undermine the procedural fairness of the hearing. In addition, while the violation of the right to counsel or the denial of an opportunity to challenge evidence may undermine the fairness of a hearing because such safeguards help to ensure

**35.** *Id.* at 1192, 1195.

**36.** Accordingly, we express no opinion on the hearing officer's conclusions that Nevers lacked standing to attack the search and that the search was justified by the hot pursuit exception to the warrant requirement.

**37.** 746 P.2d 1298 (Alaska 1987).

**38.** *Id.* at 1300.

**39.** *Id.* at 1299 & n. 6.

**40.** *Whitesides v. State, Dep't of Pub. Safety,* 20 P.3d 1130 (Alaska 2001).

**41.** *Thorne v. State, Dep't of Pub. Safety,* 774 P.2d 1326 (Alaska 1989).

**42.** *Champion v. State, Dep't of Pub. Safety,* 721 P.2d 131 (Alaska 1986).

**43.** *Javed v. State, Dep't of Pub. Safety,* 921 P.2d 620 (Alaska 1996).

**44.** *See Thorne,* 774 P.2d at 1331 (characterizing protections recognized in *Thorne, Whisenhunt,* and *Champion* as procedural safeguards).

the reliability of the evidence, application of the exclusionary rule for search and seizure violations has the opposite effect because it is "nearly always the case" that such evidence is "relevant and reliable."[45] The driving privilege is important enough to require that individuals facing license revocation enjoy basic procedural protections, but it does not follow that defendants are also entitled to application of the exclusionary rule for violations of the Fourth Amendment or Alaska's search and seizure provisions. Given that the exclusionary rule serves a unique purpose, that is, deterring police misconduct, it is distinguishable from the procedural protections that we upheld in our other cases.

In sum, application of the exclusionary rule will hamper legitimate efforts to keep drunk drivers off the roads and complicate the administration of license revocations while adding minimal deterrence to unlawful police action. In addition, consideration of evidence obtained in violation of the Fourth Amendment does not undermine the procedural fairness of revocation hearings. For these reasons, we affirm the hearing officer's determination that the exclusionary rule is inapplicable to license revocation proceedings.

## V. CONCLUSION

Because the exclusionary rule does not apply to license revocation proceedings (in the absence of shocking police misconduct in the obtaining of evidence or police action consciously directed at a probationer), the hearing officer correctly admitted the evidence of Nevers's intoxication and refusal to submit to the breath test. Accordingly, we AFFIRM the revocation of his driver's license.

MATTHEWS, Justice, not participating.

---

45. *United States v. Janis,* 428 U.S. 433, 447, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).