*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JOE D. GARIBAY, | ) | |
| | ) | Supreme Court No. S-15017 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-11-01772 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF | ) | No. 6970 - November 28, 2014 |
| ADMINISTRATION, DIVISION | ) | |
| OF MOTOR VEHICLES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

Appearances: Robert A. Sparks, Law Office of Robert A. Sparks, and Robert John, Fairbanks, for Appellant. Erling T. Johansen and Kathryn Vogel, Assistant Attorneys General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

I.      INTRODUCTION

After a woman reported having an altercation with Joe Garibay in a store, the police stopped him, then arrested him for driving under the influence of alcohol. The

Department of Motor Vehicles revoked Garibay's driver's license for 90 days, and the superior court affirmed the revocation. Garibay appeals, arguing that the police stop constituted an unconstitutional search and seizure requiring that evidence of his drinking be excluded from the license revocation proceedings. We affirm on the basis of our prior cases, which hold that the exclusionary rule applies in license revocation proceedings only in exceptional circumstances not present here.

## II.    FACTS AND PROCEEDINGS

Joe Garibay was at the Sam's Club in Fairbanks when he collided with a woman's shopping cart, waking her baby.[1] The woman demanded an apology, but Garibay swore at her instead. Assuming he was drunk because of the beer in his cart and his threatening manner, the woman called the police, then followed Garibay out to the parking lot to get his license plate number. When a police officer arrived a few minutes later, the woman told him that Garibay was "maybe . . . a drunk," that he had threatened her in front of her children, and that she wanted him charged with assault. Informed that an assault charge was unlikely, the woman asked that the police at least "find that guy to make sure he's not drunk." The officer assured her that they would try to find Garibay and "make sure he's not, you know, drunk driving, something like that."

The police located Garibay's empty vehicle shortly afterward in a nearby parking lot. Officer Fett parked behind it and activated his emergency lights. When Garibay returned, he attempted to back out of the parking space despite the police car behind him; he apparently did not notice he was blocked in until Officer Fett knocked on his window. Another officer arrived, and both officers spoke with Garibay. Although

---

[1]    The facts of this altercation are the subject of police reports but were not adjudicated; they are recited here only to place the actions of the police in the context of what they had been told.

he told them he had not consumed any alcohol that day, the officers observed that he swayed, had bloodshot and watery eyes, and smelled strongly of alcohol. He failed three field sobriety tests and blew .128 on the preliminary breath test. The officers arrested him for driving under the influence of alcohol and for possessing firearms while in an impaired state.[2] They then tested him again using the Datamaster breath testing machine, which showed a breath alcohol content of .111. As a result, the Department of Motor Vehicles (DMV) revoked Garibay's license for 90 days.

Garibay appealed the license revocation, and the DMV held an administrative hearing. Garibay was represented by counsel, who cross-examined both police officers involved in the arrest. It was Garibay's position that the officers' conduct in approaching his vehicle constituted an illegal investigative stop. But the hearing officer, citing prior decisions of this court,[3] instructed Garibay's attorney not to inquire about the stop's legality. The hearing officer concluded that the legality of the stop was not relevant in a license revocation proceeding, that there was probable cause to believe Garibay was operating a motor vehicle while under the influence of alcohol, and that the Datamaster breath test demonstrated that Garibay's breath alcohol limit was over the legal limit — thus satisfying the requirements of the revocation statute,

---

[2]    *See* AS 11.61.210(a)(1) (defining fourth-degree weapons misconduct to include a person's possession of a firearm "when the person's physical or mental condition is impaired as a result of the introduction of an intoxicating liquor").

[3]    *See  Alvarez v. State, Dep't of Admin., Div. of Motor Vehicles*, 249 P.3d 286, 296 (Alaska 2011) (holding, in part, that whether the police have reasonable suspicion to stop a driver is irrelevant in a license suspension proceeding because the exclusionary rule does not apply); *Nevers v. State, Dep't of Admin., Div. of Motor Vehicles*, 123 P.3d 958, 966 (Alaska 2005) (holding that the exclusionary rule does not apply to license revocation hearings as a general rule).

AS 28.15.166(g).[4] The hearing officer therefore affirmed the 90-day license revocation.

Garibay appealed the agency decision to the superior court, arguing again that the investigative stop was illegal. Like the hearing officer, the superior court held that the legality of the stop was irrelevant in license revocation proceedings and therefore affirmed the revocation of Garibay's license.

Garibay appeals, arguing again that the investigative stop was illegal and that this divested the DMV of jurisdiction to revoke his license. He also argues that the exclusionary rule should apply in civil license revocation proceedings, and alternatively that the exclusionary rule should at least apply to his case because the police conduct was shocking.

## III.    STANDARDS OF REVIEW

We set out the standards of review relevant here in our earlier decisions involving the application of the exclusionary rule in license revocation proceedings:

> We review license revocation hearings under AS 28.15.166(m), which provides that the court may reverse the department's determination if the court finds that the department misinterpreted the law, acted in an arbitrary and capricious manner, or made a determination unsupported by the evidence in the record. Where the superior court acts as an intermediate court of appeals, we independently review the hearing officer's decision. For legal questions not

---

[4]    As relevant here, the statute states that administrative review of a revocation decision "shall be limited to the issues of whether the law enforcement officer had probable cause to believe . . . that the person was operating a motor vehicle . . . while under the influence of an alcoholic beverage" and had chemical test results that violated the statutory limits.

involving agency expertise, we apply the substitution of judgment standard. We also review constitutional questions de novo, and will adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[5]

## IV. DISCUSSION

### A. The Exclusionary Rule Generally Does Not Apply In License Revocation Proceedings.

Under the exclusionary rule, "evidence obtained from an unconstitutional search or seizure is inadmissible and must be excluded."[6] In *Nevers v. State* we considered for the first time whether the exclusionary rule should apply to search and seizure violations in license revocation proceedings.[7] Citing *State v. Sears*,[8] we balanced the costs of applying the rule against its benefits.[9] On the cost side, we noted that "application of the exclusionary rule to license revocation hearings will in some cases frustrate the important state interest in keeping drunk drivers off the road by excluding pertinent evidence"; "will significantly increase the administrative burden of what is intended to be an informal process," particularly given that "hearing officers in Alaska need not even be lawyers"; and will likely "result in longer and more complicated

---

[5] *Alvarez*, 249 P.3d at 290-91 (quoting *Nevers*, 123 P.3d at 961) (internal quotation marks omitted).

[6] *Nevers*, 123 P.3d at 962 (citing *Ellison v. State*, 593 P.2d 640, 718 (Alaska 1979)).

[7] *Id.* at 962 n.16.

[8] 553 P.2d 907, 912-14 (Alaska 1976).

[9] *Nevers*, 123 P.3d at 963-64.

hearings in many cases."[10] On the benefit side, we considered the likelihood that applying the rule in license revocation proceedings would "deter unlawful police conduct," concluding that the effect would be insignificant "because the police are already sufficiently deterred from such unlawful conduct by the applicability of the exclusionary rule to all criminal cases that may result from their investigations."[11] Finding that the costs significantly outweighed the potential benefits, we held that the exclusionary rule was inapplicable to license revocation proceedings — with a few exceptions, discussed below.[12]

In a subsequent case, *Alvarez v. State, Department of Administration, Division of Motor Vehicles*, we affirmed a hearing officer's decision to preclude cross-examination of the arresting officer about "details leading up to the initial stop."[13] We agreed with the hearing officer "that only [the arresting officer's] observations *after* pulling Alvarez over were relevant to the statutory inquiry whether [the arresting officer] had probable cause to arrest Alvarez for driving while intoxicated."[14] We explained that "whether or not [the arresting officer] had reasonable suspicion to stop Alvarez is irrelevant in a license suspension proceeding."[15]

Applying *Nevers* and *Alvarez* in this case, the hearing officer was correct to rule that the exclusionary rule did not apply to Garibay's license revocation hearing.

---

[10] *Id.* at 963.

[11] *Id.* at 964.

[12] *Id.*

[13] 249 P.3d 286, 295 (Alaska 2011).

[14] *Id.* at 296 (emphasis in original).

[15] *Id.*

**B.		The Exceptions Noted In *Nevers* Do Not Apply To This Case.**

In *Nevers* we did note certain exceptional circumstances that would justify application of the exclusionary rule in license revocation proceedings. We held that the rule would apply if there is "police misconduct which shocks the conscience, or is of a nature that calls for the judiciary, as a matter of judicial integrity, to disassociate itself from benefits derivable therefrom."[16] In a footnote we set out another exception relevant here: "where a Fourth Amendment violation stems from a lack of probable cause for a DWI arrest, . . . because probable cause is an affirmative statutory element of the offense of refusal and is an affirmative element for proof in the license revocation proceeding."[17] Garibay argues that these exceptions allow him to challenge the legality of the investigative stop at the license revocation hearing, but we disagree.

First, we reject Garibay's argument that "the police action in this case was shocking misconduct, because of the completely speculative basis for the police officer's investigative stop." The investigative stop was based on the report of the woman at Sam's Club, who suspected from Garibay's actions and demeanor that he was drunk. Garibay did not present any facts to indicate that the officers who stopped him acted deliberately to violate his constitutional rights[18] or that they engaged in any other shocking behavior. We see no basis for applying the exception to this case.

Also inapplicable is the exception that requires exclusion of evidence where the DUI arrest is not based on probable cause. Garibay frames the relevant time as the

---

[16]		*Nevers*, 123 P.3d at 964 (quoting *State v. Sears*, 553 P.2d 907, 914 (Alaska 1976)) (internal quotation marks omitted).

[17]		*Id.* at 964 n.21.

[18]		*See Fraiman v. State, Dep't of Admin., Div. of Motor Vehicles*, 49 P.3d 241, 245 (Alaska 2002).

moment of the investigative stop rather than the arrest.  But his argument is precluded by our decision in *Alvarez*, where we affirmed the hearing officer's determination that "only [the arresting officer's] observations *after* pulling Alvarez over were relevant to the statutory inquiry whether [the arresting officer] had probable cause to arrest Alvarez for driving while intoxicated."[19]  Here, after stopping Garibay in his attempt to back out of his parking space, the officers observed that he had bloodshot, watery eyes, smelled strongly of alcohol, had balance issues, failed several field sobriety tests, and had a preliminary breath test result significantly over the legal limit.  These observations "would warrant a prudent person in believing"[20] that Garibay had committed the offense of operating a vehicle while under the influence of alcohol.[21]  Because the officers had probable cause to arrest Garibay at the relevant moment — the moment of his arrest for DUI — the second *Nevers* exception does not apply here either.[22]

## C.     The DMV Had Jurisdiction To Revoke Garibay's License.

Under the implied consent statute, AS 28.35.031(a), "[a] person who operates or drives a motor vehicle in this state . . . shall be considered to have given consent" to a test to determine the person's blood or breath alcohol concentration, if that person is "lawfully arrested" for driving under the influence of alcohol.  Garibay argues that this "lawful arrest" component of the implied consent statute must be read into

---

[19]     *Alvarez*, 249 P.3d at 296  (emphasis in original).

[20]     *State v. Blank*, 90 P.3d 156, 162 n.38 (Alaska 2004) (citing *Schmid v. State*, 615 P.2d 565, 574 (Alaska 1980)).

[21]     AS 28.35.030(a).

[22]     "Probable cause to arrest exists if the facts and circumstances known to the officer would warrant a prudent person in believing that the defendant had committed an offense."  *Blank*, 90 P.3d at 162 n.38 (citing *Schmid*, 615 P.2d at 574).

AS 28.15.166(g), the statute providing for administrative review of a license revocation, such that the DMV lacks the authority to revoke a license absent a "lawful arrest." We reject this argument too as inconsistent with our prior cases.

In *Javed v. Department of Public Safety, Division of Motor Vehicles*, we explained that although AS 28.15.166(g)(1) cites the implied consent statute, its focus "is clearly on the result of the test or the fact of refusal to take the test."[23] Our explanation continued:

> Reading subsection .166(g)(1)-(3) to encompass an inquiry into the underlying facts that justify administration of the test would render the first part of subsection .166(g), regarding the issue of whether the law enforcement officer had reasonable grounds to believe that the person was operating a motor vehicle, almost meaningless. The statute offers very precise limiting language for the issues that are to be considered. There is no reason to believe that the reference to the implied consent statutes is anything more than a descriptive tool used to identify the "chemical test" named in each instance.[24]

The statute thus does not require an inquiry into the lawfulness of the investigative stop at the administrative review hearing.

For his contrary reading of the statute, Garibay relies on the dissent in *Hartman v. State, Department of Administration, Division of Motor Vehicles*.[25] The dissent concluded that the investigative stop in *Hartman* was unlawful, and that therefore "[t]he ensuing arrest was also unlawful because [the trooper] established probable cause

---

[23]    921 P.2d 620, 625 (Alaska 1996).

[24]    *Id.*

[25]    152 P.3d 1118, 1126-30 (Alaska 2007) (Eastaugh, J., dissenting).

to arrest Hartman with information gathered during the unlawful stop."[26]

But the dissent in *Hartman* is not the law in Alaska, and it conflicts with *Nevers*, which is the law in Alaska. The police unlawfully entered Nevers's home, questioned him, and gave him a preliminary breath test that showed he was intoxicated.[27] They then arrested him. Nevers tried to exclude the results of the breath test because of the police's unlawful entry.[28] We held, however, that the results could not be suppressed because the exclusionary rule does not apply to license revocation proceedings.[29] Nevers's arrest was based on probable cause; the problem was that the probable cause was the result of an unlawful entry into his home. In a criminal proceeding, under the exclusionary rule, the police's illegal conduct would invalidate the breath test and the subsequent arrest.[30] But in a license revocation proceeding, because the exclusionary rule does not apply, illegal police conduct prior to arrest does not invalidate the arrest unless it "shocks the conscience."[31] As the dissent in *Hartman* recognized, it is the exclusionary rule that acts to invalidate an arrest by taking out of the equation some evidence on which probable cause to arrest was based;[32] without the exclusionary rule,

---

[26] *Id.*

[27] *Nevers v. State, Dep't of Admin., Div. of Motor Vehicles*, 123 P.3d 958, 960-61 (Alaska 2005).

[28] *Id.*

[29] *Id.* at 963.

[30] *See id.* at 962.

[31] *Id.* at 964.

[32] *Hartman v. State, Dep't of Admin., Div. of Motor Vehicles*, 152 P.3d 1118,
(continued...)

the evidence stays in and the arrest stands.

Because the exclusionary rule does not apply to Garibay's case, his argument that he was unlawfully arrested fails. The DMV had the authority to revoke his license.

## V.  CONCLUSION

We AFFIRM the hearing officer's decision upholding the revocation of Garibay's license.

---

[32]  (...continued)
1130 (Alaska 2007) (Eastaugh, J., dissenting) ("[A]n unlawful stop may 'invalidate' an ensuing arrest . . . through the exclusion of evidence garnered from the stop." (alterations in original)).