Sonja ALVAREZ, Appellant,

v.

STATE of Alaska, DEPARTMENT OF ADMINISTRATION, DIVISION OF MOTOR VEHICLES, Appellee.

No. S–12768.

Supreme Court of Alaska.

March 18, 2011.

---

OPINION

CARPENETI, Justice.

## I. INTRODUCTION

A driver appeals the 90–day suspension of her driver's license two and a half years after her arrest for drunk driving. The delay was almost entirely due to the fact that the officer who arrested her was deployed to Iraq with the military shortly after her arrest, and the suspension hearing was continued until the state learned of his return. The driver challenges the suspension on constitutional, procedural, and evidentiary grounds. Because the delay between the suspension and the hearing was neither a denial of due process nor arbitrary and capricious, because none of the procedural issues raised by the driver involves error on the part of the hearing officer, and because it was not error to fail to consider the driver's long period of good driving in the interim, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

On September 28, 2003, Ketchikan Police Officer Brian Perez arrested Sonja Alvarez for drunk driving. A citizen called the police after observing what he reported as an erratic driver. Perez was nearby and began to follow the car identified by the caller. Perez observed the driver fail to signal at a turn and fail to stop at a stop sign. Perez stopped Alvarez and noticed that she had bloodshot eyes, a moderate odor of alcohol, and was unsteady on her feet. Alvarez agreed to field sobriety tests. Perez reported that she had eye nystagmus[1] and was unable to perform the walk and turn test. Perez asked her to take a portable breath test. She refused. Perez then arrested Alvarez and took her to the police station.

At the police station, Perez put a video tape in the recorder, but the device recorded only audio for the first half of the tape. It recorded both audio and video for the second half. Alvarez agreed to take a breath test, but did not produce a readout until the fifth try. Alvarez recorded a breath alcohol con-

Sonja Alvarez, pro se, Ketchikan, Appellant.

Krista S. Stearns, Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

1. Nystagmus is a rapid, involuntary eyeball movement that can be the result of a number of conditions, including intoxication. *Ballard v. State*, 955 P.2d 931, 933 (Alaska App.1998), *overruled on other grounds by State v. Coon*, 974 P.2d 386 (Alaska 1999).

centration of .091 percent. It appears that at least one other officer was in the room with Perez to help him use the breathalyzer.

## B. Proceedings

After Alvarez's arrest and breathalyzer test results, Perez issued an order revoking her license and giving her notice that the revocation would be effective in seven days in the absence of a request for an administrative hearing. Alvarez was subsequently charged with driving under the influence. She timely requested a hearing, and as a result was issued a temporary license. The hearing was scheduled for March 22, 2004, almost six months later. In the meantime, Perez was deployed to Iraq with the military, and the charges against Alvarez—driving under the influence and failure to stop at sign— were dropped because Perez was expected to be unavailable "for at least one year." On February 26, 2004, Alvarez wrote to the hearing officer requesting subpoenas for the Ketchikan Public Safety Director and the Records Custodian at the Alaska State Highway Department in Ketchikan. In the same letter, Alvarez also asked her if Perez would be subpoenaed. The hearing officer denied Alvarez's requests for subpoenas, and informed her that she did not intend to subpoena Perez.

Shortly before the hearing, Alvarez petitioned the superior court to stay the administrative hearing, asking it to rule that a hearing without Perez present would violate her due process rights.[2] The superior court denied the petition, noting that there could be only two outcomes of the hearing: Either Alvarez would prevail or the hearing would be continued until Perez's return from Iraq. The court concluded that neither of those two results would violate due process.

The first hearing took place on March 22, 2004. Alvarez was present, and she called a witness to testify that she was sober the night she was arrested. She also testified on her own behalf. The hearing officer decided

to continue the hearing until Perez's return from Iraq. The hearing was ultimately rescheduled for March 10, 2006, almost two years later, once Perez had returned.

On March 1, 2006, just nine days before the hearing, an attorney entered an appearance on behalf of Alvarez. He immediately requested a continuance to review the evidence. The next day the hearing officer denied the request. On March 9, one day before the hearing, counsel for Alvarez requested the hearing officer to subpoena the evidence custodian for the Ketchikan Police Department, and the hearing officer denied his request. The hearing went ahead telephonically on March 10, but Perez, who was supposed to call in, did not. The hearing officer rescheduled the hearing for April 27.

Perez appeared telephonically at the April 27 hearing. The hearing officer had only two questions for Perez.[3] Alvarez then thoroughly cross-examined Perez, whose memory of events varied. During the hearing, the hearing officer prevented Alvarez from asking Perez questions concerning whether Perez had reasonable suspicion to stop Alvarez. The hearing officer reasoned that the exclusionary rule does not apply to license suspension proceedings, and therefore it was irrelevant whether or not Perez had reasonable suspicion to stop Alvarez.

The hearing officer suspended Alvarez's license for 90 days. Alvarez appealed to the superior court, which affirmed the hearing officer's decision. Alvarez appeals.

## III. STANDARD OF REVIEW

We laid out the standard of review for license suspension proceedings in *Nevers v. State, Department of Administration, Division of Motor Vehicles*[4]:

> We review license revocation hearings under AS 28.15.166(m), which provides that the court may "reverse the department's determination if the court finds that the department misinterpreted the law, acted in an arbitrary and capricious manner, or

---

**2.** She did not request that Perez be made available by telephone at any point.

**3.** She asked whether he prepared the police report of Alvarez's arrest, and whether there were

any other officers present when Alvarez took her breath test at the station.

**4.** 123 P.3d 958 (Alaska 2005).

made a determination unsupported by the evidence in the record." Where the superior court acts as an intermediate court of appeals, we independently review the hearing officer's decision. For legal questions not involving agency expertise, we apply the "substitution of judgment" standard. We also review constitutional questions *de novo*, and will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." [5]

We review an administrative hearing officer's evidentiary decisions for abuse of discretion.[6]

## IV. DISCUSSION

### A. The 31–Month Delay Before The Hearing Was Neither A Denial Of Due Process Nor Arbitrary And Capricious.

■ Alvarez argues that we should reverse the 90–day suspension of her driver's license because of the delay between her arrest and the suspension.[7] Alvarez argues primarily that a license suspension hearing should take place within speedy trial limits of the drunk driving arrest. She bases this argument on our cases holding that due process requires that certain other procedural safeguards apply to license suspensions. She also argues that, regardless of speedy trial limits, the delay in this case was arbitrary and capricious. We consider each of these arguments in turn.

#### 1. Speedy trial limits do not apply to license suspension proceedings.

■ Alaska Statute 28.15.165 requires suspension of the driver's license of any person who drives with a blood alcohol content of .08 percent, or who refuses to take a blood alcohol content chemical test. The driver may request an administrative hearing within seven days; a driver who does so will be issued a temporary license until the hearing.[8] Although we have addressed these license suspension proceedings several times, we have never directly addressed whether the speedy trial rule applies to them. We indirectly discussed the issue when we "summarily determine[d]" that an eight-month delay between a drunk driving arrest and the license suspension hearing did not violate due process.[9] We wrote:

> Concerning his delay claim, Whitesides likens this case to *United States v. $8,850 in United States Currency*, 461 U.S. 555 [103 S.Ct. 2005, 76 L.Ed.2d 143] (1983), in which the United States Supreme Court held that delay in initiating a civil forfeiture case may violate due process and suggested a test similar to that used to determine whether an accused's right to a speedy trial in a criminal case is violated. But this case is different from civil forfeiture cases because Whitesides was not deprived of his right to drive pending the hearing, whereas in civil forfeiture cases the property to be forfeited has typically been removed from the possession and use of the respondent pending the hearing.[10]

Thus, we have already distinguished license suspension proceedings from civil forfeiture proceedings in which a speedy trial-type rule applies. We now hold that speedy trial limits do not attach to driver's license suspension proceedings for a number of reasons, including that the driver is issued a temporary license until the revocation proceeding occurs. We consider all of these reasons now.

First, both the Alaska and United States Constitutions grant the right to a speedy trial only with regard to criminal proceedings,[11] and a license revocation proceeding is

---

5. *Id.* (internal citations omitted).

6. *Stein v. Kelso*, 846 P.2d 123, 126 (Alaska 1993).

7. Although Alvarez's 90–day suspension has already run, we have previously held that the collateral consequences of license suspension, such as higher insurance rates and adverse employment consequences, render these appeals not moot. *Graham v. State*, 633 P.2d 211, 213 (Alaska 1981). The State has not argued that this appeal is moot.

8. AS 28.15.166(b)-(c).

9. *Whitesides v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 20 P.3d 1130, 1134 (Alaska 2001).

10. *Id.*

11. Section 11 of the Alaska Constitution reads: "In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve." The Sixth Amendment

not a criminal proceeding. We have held that license suspension for drunk driving is not criminal punishment.[12] Furthermore, only one of the three identified policy reasons for the speedy trial rule directly applies in license suspension proceedings. We have said that the purposes behind the speedy trial rule are: "(1) to prevent harming the defendant by a weakening of his case as evidence and memories of witnesses grow stale with the passage of time; (2) to prevent prolonged pretrial incarceration; and (3) to limit the infliction of anxiety upon the accused because of longstanding charges."[13]

Although the "prevention of faded memories" purpose might apply to some license suspension proceedings, the remaining two purposes do not. The second purpose does not apply because licensees are issued temporary licenses pending suspension hearings,[14] and obviously licensees are not incarcerated. As to the third purpose, loss of a driver's license is not the equivalent of criminal punishment in its effect on a person's professional and personal life. Finally, the exclusionary rule does not apply.[15]

Because the first purpose is outweighed by the second and third, we decline to extend the constitutional speedy trial right, not explicitly applicable to civil cases, to license suspension proceedings.

## 2. The delay did not violate due process.

 Although we conclude that the right to speedy trial does not apply, we must still determine whether the delay in this case violated due process. To do so, we apply the *Mathews v. Eldridge* framework to evaluate whether administrative proceedings satisfy due process.[16] We consider (1) the private interest that the official action affects, (2) the risk of erroneous deprivation of that interest through the procedures used and the probable value, if any, of additional safeguards, and (3) the government's interest, including fiscal and administrative burdens, in implementing additional safeguards.[17]

As to the first factor, we have previously held that a driver's license is an important property interest.[18] As to the second, we

of the United States Constitution reads: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." We have already held that the right to a jury trial does not attach to license suspension proceedings. *Thorne v. State, Dep't of Pub. Safety*, 774 P.2d 1326, 1329–31 (Alaska 1989). This is not to say that speedy trial limits are never an appropriate measure of due process in civil matters. *See United States v. $8,850 in United States Currency*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

**12.** *State, Dep't of Pub. Safety, Div. of Motor Vehicles v. Niedermeyer*, 14 P.3d 264, 270 (Alaska 2000).

**13.** *Rutherford v. State*, 486 P.2d 946, 947 (Alaska 1971).

**14.** AS 28.15.166(c).

**15.** *See infra* Part IV. D.

**16.** *Whitesides v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 20 P.3d 1130, 1134 (Alaska 2001) (citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The State argues that in *State v. Schnell*, 8 P.3d 351 (Alaska 2000), we created a "four-part test to use to evaluate whether a delay in an administrative proceeding requires the agency to rescind its administrative action." The State misinterprets *Schnell*. *Schnell* applied the standard four-part test for estoppel to the fact pattern in that case,

and held that the government was not estopped from rescinding Schnell's insurance agent license on the grounds that the government had indicated it would not suspend his license and he relied on that indication. *Id.* at 356. That case did not discuss due process, and Alvarez does not argue that the government told her it would not suspend her license and that she relied on that statement to her detriment. *See id.*

**17.** *Whitesides*, 20 P.3d at 1135. *See also Brandal v. State, Commercial Fisheries Entry Comm.*, 128 P.3d 732, 738 (Alaska 2006) (where agency failed to take final action on fisherman's application for limited entry permit for 22 years, in addition to *Mathews* factors we analyzed factors from *Fed. Deposit Ins. Corp. v. Mallen* that United States Supreme Court uses to determine whether extended delay violates due process: "the importance of the private interest and the harm to this interest occasioned by delay[,] the justification offered by the Government for delay and its relation to the underlying governmental interest[,] and the likelihood that the interim decision may have been mistaken," and noting that these factors "closely track" the *Mathews* factors) (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988)).

**18.** *Whitesides*, 20 P.3d at 1135. In *Whitesides* the driver's license was suspended for one year. *Id.* at 1134. We did not discuss the length of the

conclude that the delay in this case did not notably increase the risk of erroneous deprivation. Moreover, any such risk was mitigated by the grant of a temporary license until the hearing. As to the third factor, the government has a high interest in removing unsafe drivers from the road, and conducting license suspension proceedings without delay increases the State's fiscal and administrative burdens and may prevent the State from suspending the licenses of some unfit drivers.[19] We conclude that these factors weigh against Alvarez's claim.

Finally, we have never held that administrative delay alone, without prejudice, violates due process.[20] Any prejudice to Alvarez was slight. First, she was issued a temporary permit to drive throughout the delay. And second, Perez had made an audio tape of the original encounter, an audio and partial video tape of the encounter at the station, and he had recorded the incident in his police report. This substantially mitigated any prejudice due to Perez's faded memory.

### 3. Alvarez's claim that the hearing officer acted arbitrarily and capriciously is waived.

■ Alvarez argues that the hearing officer acted arbitrarily and capriciously in failing to get Perez's testimony by telephone while he was in Iraq.[21] But Alvarez did not request that Perez's testimony be taken telephonically from Iraq at the time. Therefore, we conclude Alvarez waived this argument

by failing to make it in the proceedings below.

### B. The Hearing Officer Did Not Err In Taking Perez's Testimony Telephonically.

#### 1. *Whitesides* does not require that Officer Perez's testimony be taken in person.

■ Relying primarily on *Whitesides v. State, Department of Public Safety, Division of Motor Vehicles*,[22] Alvarez argues that taking Perez's testimony telephonically violated her right to due process. The State responds that *Whitesides* holds that due process requires an in-person hearing only for a licensee whose credibility is at issue, not for other witnesses. We conclude that an in-person hearing was not required because Perez's credibility was not at issue.

Alaska Statute 28.15.166(e) states that a license suspension hearing "must be held by telephone unless the hearing officer finds that a telephonic hearing would substantially prejudice the rights of the person involved in the hearing or that an in-person hearing is necessary to decide the issues to be presented in the hearing." In *Whitesides*, we interpreted that statute to require an in-person hearing at the request of a licensee whose credibility is at issue.[23] We reasoned that a telephonic hearing in those circumstances would violate due process.

But in this case, Officer Perez's credibility was not in material dispute. The license revocation hearing was limited to two ques-

suspension in our analysis, and the State does not argue that a 90-day suspension might be a lesser property interest than a full year suspension.

19. This is especially true considering the due process requirement of an in-person hearing for a licensee whose credibility is at issue. In *Whitesides*, we concluded that the burden to the State in conducting an in-person hearing in those circumstances was low in part because "hearing officers can limit their travel to times when they have several cases for hearing." 20 P.3d at 1138.

20. *Brandal*, 128 P.3d at 740.

21. Alvarez also argues that "the hearing officer's unilateral decision to postpone matters another

year until her return from maternity leave ... was also arbitrary [and] capricious." But from the record it does not appear that the hearing officer's maternity leave affected the delay. It appears that, before she went on leave, the Ketchikan Police Department informed the hearing officer that Perez would be abroad for another 18 months. After her maternity leave, about 16 months later, she called again to find out if Perez "maybe came back early." In fact, Perez had been back for a full year. Although we are somewhat concerned that the DMV did not do a better job of keeping track of Perez, it does not appear that the hearing officer postponed the hearing due to her maternity leave.

22. 20 P.3d 1130 (Alaska 2001).

23. *Id.* at 1132.

tions: Did Officer Perez have probable cause to believe that Alvarez was operating her vehicle while under the influence of alcohol, and did Alvarez fail a breath alcohol concentration test?[24] There was no real dispute that Alvarez failed the breath alcohol concentration test after her arrest, so the contested issue at the revocation hearing was whether Officer Perez had probable cause to believe that Alvarez was operating her vehicle while under the influence. But on the first day of the hearing Alvarez conceded six key observations that were noted in Officer Perez's report. These observations demonstrated probable cause as a matter of law.

■ Officer Perez noted Alvarez was driving; Alvarez admitted she was operating a car. Officer Perez noted the odor of alcohol; Alvarez explained this by testifying that she had a couple of glasses of wine at dinner and that she had admitted this fact to Officer Perez. Officer Perez noted Alvarez's bloodshot and watery eyes; Alvarez explained this by testifying that she "had just been tending a barbecue." Officer Perez noted Alvarez failed the eye nystagmus field sobriety test; Alvarez explained this by testifying that she had eye problems. Officer Perez noted Alvarez failed the walk-and-turn field sobriety test; Alvarez explained this by testifying that "[Officer Perez] ask[ed] me to do [nine] steps. I did [thirteen]." Finally, Officer Perez noted that Alvarez was swaying. Alvarez explained this by testifying that she was standing on a "steep street" in "4–inch heel[s]."

Alvarez's explanations for Officer Perez's observations did not cast doubt on Officer Perez's credibility. More importantly, Alvarez's explanations did not go to the heart of the matter: The six observations that Alvarez conceded lead to the inescapable conclusion that Officer Perez had probable cause to arrest her for driving under the influence.[25]

Because Officer Perez's credibility was not in material dispute, we decline to reach the question whether *Whitesides* should be extended to require the in-person testimony of any material witness whose testimony is in dispute, leaving that question for resolution in a case involving such a witness.

### 2. Taking Perez's testimony telephonically was not arbitrary and capricious.

■ Alvarez asserts, without authority, that the decision "to take Officer Perez' testimony telephonically when he was back and could testify in person was arbitrary and capricious as well as a misinterpretation of the law." The law is to the contrary. Alaska Statute 28.15.166(e) provides that a license suspension hearing "must be held by telephone unless the hearing officer finds that a telephonic hearing would substantially prejudice the rights of the person involved in the hearing or that an in-person hearing is necessary to decide the issues to be presented in the hearing." Thus, the law presumes that the hearing will be telephonic unless the hearing officer finds that in-person testimony is necessary. The hearing officer here did not abuse her discretion under the statute. The decision, founded as it was on statute, was not arbitrary and capricious.

### C. The Hearing Officer Did Not Err In Denying Alvarez's Requests For Subpoenas.

■ Alvarez argues that the hearing officer erred in refusing to subpoena the Ketchikan Public Safety Director, the records custodian for the Alaska State Highway Department in Ketchikan, and the evidence custodian for the Ketchikan Police Department. Alaska Statute 28.15.166(f)(4) gives a hearing officer authority to issue subpoenas.

24. AS 28.15.166(g).

25. *See, e.g., Anchorage v. Cook,* 598 P.2d 939, 942 (Alaska 1979) (holding officer had probable cause to arrest for DUI in light of defendant's "inability to perform the [sobriety] test that he attempted, together with [the officer's] other observations"); *Bertilson v. State,* 64 P.3d 180, 184 (Alaska App.2003) (concluding officers had probable cause after they observed that defendant's

"eyes were watery and bloodshot and that he had an odor of alcohol," and that defendant failed the heel-to-toe and horizontal gaze nystagmus tests); *Russell v. Municipality of Anchorage,* 706 P.2d 687, 689 (Alaska App.1985) (holding officers had probable cause because "[i]n addition to [defendant's] appearance and the strong odor of alcohol, the officers were aware of his inability to perform certain tests of manual dexterity").

The statute places no limitations on that authority. We review the evidentiary decisions of a lower court, or in this case a hearing officer, for abuse of discretion.[26] The hearing officer refused to issue the subpoena for the Ketchikan Public Safety Director on the grounds that the information Alvarez wanted could be obtained by written discovery. She refused to subpoena the records custodian of the Alaska State Highway Department on the grounds that the custodian's testimony would be irrelevant to the limited inquiry of the license suspension hearing. The record does not reflect why the hearing officer refused to subpoena the Ketchikan Police Department evidence custodian. But as the request was made one day before the scheduled hearing, Alvarez had been instructed to request subpoenas at least ten days before a hearing, and the hearing officer had already denied her an extension of time to obtain last-minute discovery, it appears that she refused to issue the subpoena on the grounds that it was not timely.

■■■ The hearing officer had discretion to deny these requests for subpoenas. Alaska Statute 28.15.166(f) and (g) explicitly limit the hearing to evidence relevant to the license suspension.[27] A hearing officer has discretion to refuse to issue subpoenas that the hearing officer concludes would generate only irrelevant and cumulative evidence.[28]

The hearing officer's reasons for refusing the subpoenas are more than adequately supported in the record. First, the subpoena request the day before the hearing was untimely. The hearing notice clearly stated that the hearing officer must receive all sub-

poena requests at least ten days before the hearing. Besides being untimely, the subpoena request sought irrelevant testimony. For example, Alvarez wished to subpoena the police evidence custodian to testify regarding Alvarez's "spoilation" argument, which apparently refers to the failure of the video camera in the station to record video for the full time it was running. But it is unclear how this supports any of her defenses as she never alleges that anything relevant was on that tape.[29] Evidence that the highway records custodian could have presented concerning the condition of the roadway was not relevant to a hearing devoted to determining if Alvarez was driving and was under the influence. Likewise, Alvarez does not show that the public safety director had evidence relevant to the limited scope of the hearing.

### D. The Hearing Officer Did Not Err In Limiting The Evidence.

■■■ Alvarez argues that the superior court erred in limiting the inquiry of the hearing to the "statutory issues" of whether Perez had probable cause to arrest Alvarez for drunk driving and whether Alvarez refused or failed the breath test.[30] Alvarez points to only one incident in which the hearing officer limited the evidence. This was when the hearing officer prevented Alvarez from cross-examining Perez about details leading up to the initial stop, reasoning that whether Perez had reasonable suspicion to stop her is not relevant under AS 28.15.166(g). The hearing officer reasoned that Perez's observations *before* the traffic stop were relevant only to whether Perez had

26. *Stein v. Kelso*, 846 P.2d 123, 126 (Alaska 1993).

27. AS 28.15.166(f) gives the hearing officer authority to "receive relevant evidence." Section (g) limits the subject matter of the hearing.

28. *See Gibson v. Geico General Ins. Co.*, 153 P.3d 312, 316 (Alaska 2007). *See also* Alaska R. Civ. P. 26(b)(2) ("The frequency or extent of use of the discovery methods otherwise permitted under these rules shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive . . ."); Alaska R. Evid. 401, 402.

29. Alvarez only alleges that the tape would show that Perez failed to observe her for 15 minutes before taking her breath sample, but she does not allege that anything happened in that 15 minutes that would change her breathalyser result. She also alleges that the video would "show fiddling and adjusting of the tape which this machine is not suppose[d] to require," but she does not say which machine or how that is relevant to her case. Assuming the machine is the breathalyzer, and not the tape recorder, this could support her argument that her test result was incorrect. But the records custodian would have no knowledge of that.

30. AS 28.15.166(g).

reasonable suspicion to pull Alvarez over and conduct sobriety tests—an inquiry that is irrelevant under our case law holding that the exclusionary rule does not apply to license suspension proceedings. The hearing officer determined that only Perez's observations *after* pulling Alvarez over were relevant to the statutory inquiry whether Perez had probable cause to arrest Alvarez for driving while intoxicated.

The hearing officer was correct: We have held that the exclusionary rule does not apply to license suspension hearings.[31] Therefore whether or not Perez had reasonable suspicion to stop Alvarez is irrelevant in a license suspension proceeding, and the hearing officer did not err in excluding the evidence. Alaska Statute 28.15.166(g) provides that the hearing

> shall be limited to the issues of whether the law enforcement officer had probable cause to believe that the person was operating a motor vehicle ... while under the influence of an alcoholic beverage ... and whether (1) the person refused to submit to a chemical test ...; [or] (2) the chemical test ... produced a result [over .08 blood alcohol content].

We have expanded that inquiry somewhat with our case law.[32] But because we have

held that the exclusionary rule does not apply in license suspension hearings, whether there was reasonable suspicion for the initial stop was not before the hearing officer.

In *Nevers v. State, Department of Administration, Division of Motor Vehicles*,[33] in which we held that the exclusionary rule does not apply to license suspension proceedings, we noted certain exceptions,[34] including where police action "shocks the conscience, or is of a nature that calls for the judiciary, as a matter of judicial integrity, to disassociate itself from benefits derivable therefrom." [35] But Alvarez did not allege that any of the *Nevers* exceptions might apply. The hearing officer only excluded evidence related to the initial investigatory stop, and Alvarez was able to fully cross-examine Perez about whether he had probable cause to arrest her based on their encounter after the stop. It was not error for the hearing officer to limit the inquiry as she did.

### E. The Hearing Officer Did Not Err In Continuing The Hearing To Take Perez's Testimony After Perez Did Not Appear.

Alvarez argues that the hearing officer erred in continuing the hearing and tak-

---

**31.** *Nevers v. State, Dep't of Admin., Div. of Motor Vehicles*, 123 P.3d 958, 964 (Alaska 2005).

**32.** *See Thorne v. State, Dep't of Pub. Safety*, 774 P.2d 1326, 1329 (Alaska 1989) (holding that procedural safeguards "include the right to consider the inherent margin of error in breathalyzer test results").

**33.** 123 P.3d at 958.

**34.** *Id.* at 963–64. We left room for the possibility that the exclusionary rule might apply in two unique circumstances, neither of which have been alleged in this case:

> We recognize that there may be two exceptions to our conclusion that the exclusionary rule is inapplicable in license revocation proceedings. First, where a Fourth Amendment violation stems from a lack of probable cause for a DWI arrest, exclusion may well be mandated because probable cause is an affirmative statutory element of the offense of refusal and is an affirmative element for proof in the license revocation proceeding. Second, ... a search for blood evidence in direct violation of ... statutory prohibitions would probably require exclusion of the test results in a subsequent

administrative license revocation proceeding....

**35.** *Id.* at 964 (quoting *State v. Sears*, 553 P.2d 907, 914 (Alaska 1976)). We recognize there is some confusion in the case law, and take this opportunity to affirm *Nevers*. Just a few months after *Nevers*, we issued an opinion in *Saltz v. State*, in which we analyzed whether or not an officer had reasonable suspicion to stop a suspected drunk driver in an appeal from a license suspension, without referring to *Nevers*. *Saltz v. State, Dep't of Admin., Div. of Motor Vehicles*, 126 P.3d 133 (Alaska 2005). In 2007 we addressed an exclusionary rule appeal from a license suspension, and did not address the conflict between *Nevers* and *Saltz*. *Hartman v. State, Dep't of Admin., Div. of Motor Vehicles*, 152 P.3d 1118 (Alaska 2007). In *Hartman*, we treated *Nevers* as good law, but ultimately held that there was reasonable suspicion for the stop. *Id.* at 1122. Because there was reasonable suspicion for the stop, we concluded that we did not need to reach the question of whether a *Nevers* exception applied. *Id.* Despite *Saltz*, we affirm the holding in *Nevers* that the exclusionary rule does not apply as a matter of course in license suspension proceedings.

ing Perez's testimony after he failed to call in for the March 10, 2006, hearing. It is a bit unclear what Alvarez thinks the hearing officer should have done. In her brief Alvarez writes: "The hearing officer misinterpreted the law when she failed to exclude [Perez's] testimony or otherwise sanction Officer Perez for his willful disobedience of his subpoena." [36] She also cites AS 28.15.166(d), which says that if the licensee requests a hearing and then fails to appear, the licensee has waived her right to a hearing, and the DMV determination based on the police report "becomes final." She argues that the "same remedy" should apply if the arresting officer fails to appear. Apparently this is another way of arguing that the hearing officer should have excluded Perez's testimony and relied on the existing record.

■ We reject Alvarez's argument as legally unsupported. A hearing officer is not required to prohibit a witness from testifying if the witness fails to appear. And AS 28.15.166(d) does not require a decision on the available record if a witness fails to appear. The law provides two penalties for witnesses who disobey a subpoena. Alaska Civil Rule 45 allows a court to hold in contempt a witness who disobeys a subpoena, including administrative subpoenas.[37] Alaska Statute 09.20.120 reads:

> A witness who disobeys a subpoena served on the witness shall also forfeit to the party requiring the attendance of the witness the sum of $50 and all damages which that party may sustain by the failure of the

witness to attend. The forfeiture and damages may be recovered in a civil action. Alvarez never asked the hearing officer to hold Perez in contempt, nor did she ask for forfeiture or damages. In any case, the decision not to hold someone in contempt is entirely within the lower court's—or hearing officer's—discretion.[38]

Furthermore, Alvarez's argument that the hearing officer should not have allowed Perez to testify makes little sense. Alaska Statute 28.15.166(h) entitles Alvarez to cross-examine Perez.[39] We have stated that: "A meaningful license revocation hearing, like a meaningful trial, should therefore include 'the presence of the arresting officer, the production of the report of the arresting officer and any tape recordings, videotapes, or transcripts concerning events surrounding the arrest.'"[40] It was in Alvarez's interest—and it was her due-process right—to cross-examine Perez. She insisted on doing so. Alvarez's argument fails.

■ However, we do note our concern about the appearance of impropriety when the hearing officer refused to continue the hearing when Alvarez's lawyer requested a continuance, but continued the hearing when Perez did not appear. Perez had as much advance notice of the hearing date as had Alvarez, but the hearing officer was much more flexible in accommodating Perez than Alvarez. Hearing officers must not only be neutral decision makers, they must also avoid the appearance of impropriety or bias.[41] Al-

**36.** The State argues that she waived this argument by not objecting to the continuation of the hearing at the time, but we disagree. Although her attorney's objection was somewhat vague and unclear, he did object to the continuance at the time.

**37.** The same rule applies in criminal proceedings. Alaska R.Crim. P. 17(g).

**38.** *Stuart v. Whaler's Cove, Inc.,* 144 P.3d 467, 469 (Alaska 2006).

**39.** AS 28.15.166(h) reads:
The determination of the hearing officer may be based upon the sworn report of a law enforcement officer. The law enforcement officer need not be present at the hearing unless either the person requesting the hearing or the hearing officer requests in writing before the hearing that the officer be present. If in the

course of the hearing it becomes apparent that the testimony of the law enforcement officer is necessary to enable the hearing officer to resolve disputed issues of fact, the hearing may be continued to allow the attendance of the law enforcement officer.

**40.** *Hartman,* 152 P.3d at 1124 (quoting *Graham v. State,* 633 P.2d 211, 216 n. 12 (Alaska 1981)). We note that "present" here includes presence by telephone. *See Gregg v. Gregg,* 776 P.2d 1041, 1044 (Alaska 1989) (holding that an oath taken by an out-of-state witness participating in an Alaska proceeding by telephone is valid due to "the witness' constructive presence in the courtroom and ability to provide testimony").

**41.** Although DMV hearings are not within the jurisdiction of the Officer of Administrative Hearings under AS 44.64.030, the code of conduct

though we find the hearing officer did not abuse her discretion in continuing the hearing, (and that the continuance cured any prejudice from the denial of Alvarez's request for a continuance), we note that her conduct in this situation may have appeared biased.

### F. The Hearing Officer Did Not Err In Refusing To Consider Alvarez's "Fitness To Drive" During The Delay.

 Alvarez argues that the hearing officer should have taken into account her two and a half years of good driving before suspending her license for 90 days. She makes two arguments. The first compares her case to *State, Department of Commerce and Economic Development v. Schnell*,[42] which she claims holds that "when there is a long delay, the licensee is entitled to be judged on current fitness to be licensed." Second, she argues, briefly, that the hearing officer should have taken into account her driving history over the two and a half year delay because otherwise suspending her license for 90 days is purely punitive, and the full protections of criminal procedure should apply.[43] She bases this argument on *State v. Niedermeyer*,[44] in which we explained that a driver's license suspension for drunk driving is "remedial" rather than "punitive" because

of the direct relationship between the suspension and the State's goal of removing unsafe drivers from the road.[45] If the suspension were punitive rather than remedial, she would be entitled to the full range of criminal procedural protections.[46]

As to Alvarez's first argument, *Schnell* is distinguishable from this case. In *Schnell*, a licensed insurance agent was convicted of a felony for failing to declare assets in his personal bankruptcy filing.[47] The Alaska Division of Insurance then sought to remove Schnell's insurance agent license on the grounds that the felony conviction reflected untrustworthiness.[48] After a hearing, the hearing officer recommended suspension of Schnell's license.[49] But the Division of Insurance rejected the recommendation and failed to act on the matter for almost three years, when it suspended Schnell's license.[50] We remanded, requiring the Division to consider Schnell's good record during the long delay.[51]

But the Division of Insurance in *Schnell* had a great deal of discretion in determining how to act in response to Schnell's felony conviction.[52] In this case, the statutes mandate suspension of the driver's license for a certain period when a hearing officer finds certain facts.[53] The hearing officer has no discretion to look at other factors or evi-

---

adopted by the head of the Office of Administrative Hearings applies, pursuant to AS 44.64.050(b), to DMV hearing officers. AS 44.64.050(b)(2) and (3) require that hearing officers avoid impropriety or the appearance of impropriety and perform the duties of the office impartially and diligently.

42. 8 P.3d 351 (Alaska 2000).

43. Although her argument on this point is somewhat unclear, we generally address a pro se appellant's arguments if her "briefing was such that we could discern [her] legal arguments and the appellee could reply to them." *Gilbert v. Sperbeck*, 126 P.3d 1057, 1062 (Alaska 2005) (internal citations omitted). The State responds to her argument also briefly. It argues summarily that, despite the delay, the 90-day suspension served the administrative goal of removing unfit drivers from the road. The State also argues that she waived this argument by failing to raise it in the proceedings below, but we disagree. Although her legal arguments could have been clearer, she did argue before the hearing officer that to suspend the license of a "fit driver can only be described as an act of punishment," and

she did argue that the hearing officer should take into account her good driving record during the delay.

44. 14 P.3d 264 (Alaska 2000).

45. *Id.* at 268–69.

46. *See id.*

47. 8 P.3d at 354.

48. *Id.*

49. *Id.*

50. *Id.* at 354–55.

51. *Id.* at 360.

52. *Id.* ("the director has broad discretion to decide what sanction is appropriate").

53. AS 28.15.165, .166.

dence. The hearing officer's inquiry in this case is much narrower than the inquiry in *Schnell*. Also, unlike this case, the conduct underlying the felony conviction that led to the revocation of Schnell's license was not part of the licensed conduct.

As for Alvarez's second argument, we conclude that the long delay in this case did not render the suspension punitive. In *Niedermeyer*, we addressed whether a minor arrested for underage consumption of alcohol unconnected with driving had a due process right to the protections afforded a criminal defendant in the administrative process to suspend his driver's license.[54] We concluded that the minor had a due process right to the same protections as a criminal defendant because the license suspension was "punitive" rather than "remedial."[55] We reasoned as follows:

> In *Baker v. City of Fairbanks*, we defined criminal prosecutions to include the trial of offenses that "may result in the loss of a valuable license, such as a driver's license." We then qualified this definition by carving out an exception for administrative revocations based on conduct that demonstrates unfitness to drive:
>
> > [The category of "criminal" prosecutions] does not cover revocation of licenses pursuant to administrative proceedings where lawful criteria other than criminality are a proper concern in protecting public welfare and safety, as the basis of revocation or suspension in such instances is not that one has committed a criminal offense, but that the individual is not fit to be licensed, apart from considerations of only guilt or innocence of a crime.[56]

 We concluded that license suspension for driving while intoxicated is not a "criminal prosecution" because of the direct relationship between the act of driving while intoxicated and the administrative goal of removing unfit drivers from the roads. But we reasoned that license suspension for underage drinking is a "criminal prosecution" because "the conduct triggering revocation does not necessarily, or even probably, reflect on the arrested minor's fitness to drive."[57] As discussed above, when a suspension is "remedial" rather than punitive, the substantive safeguards of criminal process—such as protection from double jeopardy, the right to jury trial, and proof beyond a reasonable doubt—do not apply.[58] We conclude that the long delay in this case did not break that essential connection between the conduct and the administrative goals that make a license revocation "remedial." The act of driving while intoxicated is an act of unfit driving, dangerous to the public. Suspending the driver's license, even after a long delay in which the driver drove unexceptionably, still furthers the administrative goal of protecting the public and removing unfit drivers from the road. The suspension serves to deter future unfit driving, and creates a record for the DMV of a driver's overall fitness.[59] The DMV has wide latitude to carry out its mandate to protect the public from unfit drivers, and we conclude that this suspension is sufficiently related to the DMV's goals that it is "remedial" rather than "punitive," despite the delay.

## V. CONCLUSION

We AFFIRM the 90–day suspension of Alvarez's license.

MATTHEWS, Justice, not participating.

---

54. 14 P.3d 264 (Alaska 2000).

55. *Id.* at 268.

56. *Id.* at 269 (quoting *Baker v. Fairbanks*, 471 P.2d 386, 402 n. 28 (Alaska 1970)).

57. *Id.* at 270.

58. *See id.* at 269; *Thorne v. State, Dep't of Pub. Safety*, 774 P.2d 1326, 1329 (Alaska 1989).

59. *See* AS 28.15.151 (directing that the DMV keep a record of "every license that has been suspended ... and the reason for [the] action[ ]").